**In re the MARRIAGE OF Richard Bruce WAGNER and Carol Ann Wagner.**

**Upon the Petition of Richard Bruce Wagner, Appellee,**

**And Concerning Carol Ann Wagner, Appellant.**

No. 98–166.

Supreme Court of Iowa.

Jan. 20, 2000.

Michael L. Mollman of Mollman Law Office, Cedar Rapids, for appellant.

Stephen B. Jackson and Stephen B. Jackson, Jr., Cedar Rapids, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, CADY, and HARRIS,* JJ.

LARSON, Justice.

Both parties to a marriage dissolution action have appealed from district court orders concerning alimony, child support, and property division. We modify and affirm on the appeal and affirm the cross-appeal.

## I. *Facts and Proceedings.*

Richard and Carol Wagner were married in 1971. They had four children: Wendi, born October 21, 1973; Ami, born May 3, 1975; Steffani, born August 23, 1978; and Lindsi, born April 4, 1982.

Early in the marriage, Carol worked at several jobs while Richard was in dental school. Carol stopped working outside of the home to care for their children. When Richard graduated from dental school in 1974, they moved to Texas for two years where he served in the Air Force. They moved to Cedar Rapids in 1976, and Richard opened a dental practice there. Carol worked as his receptionist. She went to part-time employment in 1978 in order to spend more time with their children. In 1984 she began staying at home full time. She also began providing day care to other children.

Richard developed carpal tunnel syndrome in his right hand and sold his dental practice in 1988. He held several different jobs until 1992 when he decided he was able to return to dentistry. He purchased a practice in Cedar Rapids for $235,000. Carol began working as the office manager in 1994 and continued in that position until Richard petitioned for dissolution of their marriage.

Richard continues to practice dentistry but suffers from a condition called "essential tremor." Although no medical testimony was received at trial, Carol concedes he has this condition. She argues, however, that it is not debilitating to him. The disease is apparently similar to Parkinson's disease. Without medication, Richard's hand shakes, his voice cracks, and he is unable to hold his head steady. Richard claims this condition limits his ability to work and has prevented him from maintaining a high level of income. At the time of trial, Carol was employed at $6.15 per hour. She suffers from anemia, and because of that, she is limited to working thirty-two hours a week.

After Richard petitioned for dissolution in May 1996, Carol received a temporary order for child support and alimony, under which Richard was to pay $1300 a month child support and $750 a month alimony. The trial was held May 5, 1997, before Judge William R. Eads. On June 20, 1997, after the dissolution case had been submitted to the court but before Judge Eads issued his decree, Richard's attorney, Tom Jenk, sent a letter to Judge Eads enclosing a copy of an application he was filing and asking to reduce the amount of alimony and child support his client was paying under the temporary order. Jenk stated his client was not able to pay those amounts because he had spent his inheritance and had "maxed out" his credit cards. Three days later, the original of the application was filed. Carol filed a resistance to the application for modification on June 25, 1997. She also requested attorney fees and sanctions based on Jenk's ex parte letter to Judge Eads. As of this time, the decree had not yet been entered.

The dissolution decree was entered on July 17, 1997, by Judge Eads. The decree awarded the parties joint custody of their minor children, with primary care to Carol. Carol and Richard were made jointly responsible for their minor children's medical expenses not covered by insurance and for the children's post-high school education expenses. The court divided the marital property and debts and made each

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

party responsible for their own attorney fees. The court ordered Richard to pay child support of $359.75 a month and ordered that neither party would receive alimony.

On July 23, 1997, Carol filed a motion for sanctions, a motion for Judge Eads to recuse himself, and a motion for new trial, based on attorney Jenk's letter. Carol claimed the letter improperly influenced the judge in ruling on child support and alimony. In response to Carol's motion, Judge Eads ordered a new trial as to alimony only, finding the Jenk letter to be an "irregularity" under Iowa Rule of Civil Procedure 244(a) (ground for new trial).

On September 19, 1997, Carol filed a rule 179(b) motion asking the court to reconsider its decree, which had been filed on July 17, 1997, and to make additional findings of fact. She asked the court to reconsider its rulings regarding child support, payment of post-high school expenses, the division of marital property and debts, and the court's denial of attorney fees for Carol. On October 29, 1997, Carol filed an amendment to her rule 179(b) motion in which she asked the court to expand its ruling ordering a new trial as to alimony to also include child support. On December 30, 1997, Judge Eads denied Carol's rule 179(b) motion of September 19.

On October 8, 1997, Carol filed a garnishment against Richard seeking unpaid child support and alimony. She sought three months of past due child support and $359.75 per month (as provided by the dissolution decree) and four months of past-due alimony (as provided by the court's temporary support order of February 17, 1997). On December 15, 1997, Judge Lynne E. Brady quashed the garnishment. On December 23, Carol filed a rule 179(b) motion asking the court to reconsider and rule that the court's temporary support order as to alimony was still in effect until a new decree was entered. The motion was denied, and Carol filed a notice of appeal on January 22, 1998.

On April 1, 1998, a new trial was held on the issue of alimony, and on April 8, 1998, Judge David M. Remley entered an order for Richard to pay $500 per month. Richard appealed from that order, and the two appeals were ordered by this court to be consolidated. Richard's separate appeal is considered as a cross-appeal.

## II. *Summary of the Issues.*

Carol's appeal raises three issues: (1) the court's failure to grant a new trial on all issues; (2) its failure to reinstate the temporary order for alimony; and (3) (in the event a new trial is not ordered) the court's error in its property division, child support, and attorney fees provisions. Richard's appeal challenges only the court's permanent alimony award under Judge Remley's order.

## III. *Standard of Review.*

The court's standard of review in dissolution-of-marriage proceedings is de novo. *In re Marriage of Smith,* 573 N.W.2d 924, 926 (Iowa 1998). The court is obliged to examine the entire record and adjudicate rights anew on the issues properly presented. *Id.* (citing *In re Marriage of Geil,* 509 N.W.2d 738, 740 (Iowa 1993)).

> Our scope of review of a ruling on a motion for a new trial depends on the grounds asserted in the motion. To the extent the motion is based on a discretionary ground, we review it for an abuse of discretion. But if the motion is based on a legal question, our review is on error. In discretionary matters, the trial court is accorded broad but not unlimited discretion.

*Roling v. Daily,* 596 N.W.2d 72, 76 (Iowa 1999) (citations omitted). An abuse of discretion is found when the trial court has clearly exercised its discretion on untenable grounds or acted unreasonably. *Benson v. Richardson,* 537 N.W.2d 748, 762 (Iowa 1995).

## IV. The New–Trial Order.

■ Attorney Jenk's letter to Judge Eads said:

Enclosed you will find a request for modification of the temporary order for child support and alimony. My client phoned this office and indicated he couldn't afford to make the payments as outlined in the previous order of February 17, 1997 for the reasons as indicated in the motion, but didn't want to be in contempt, so I told him to pay what he could. He indicated that after this last payment, he has depleted his credit with his credit cards and has used all of his inheritance and can't afford to continue making payments which total $2,050.00 monthly.

Your consideration would be appreciated.

The court granted the new trial on alimony only, stating that

[u]nderstandably the Respondent could consider that the alimony issue had been unfairly adjudicated under these circumstances. Therefore, the Court will strike the portion of the Decree relative to denial of decretal alimony and have the issue set for adjudication before another judge.

Carol complains that, because all economic issues in a dissolution are interrelated, the court's new trial order should have gone further and granted a new trial on all economic issues.

■ A district court has broad discretion in ruling on new-trial motions, and we will not interfere in the exercise of that discretion in the absence of an abuse. *Kiner v. Reliance Ins. Co.,* 463 N.W.2d 9, 13 (Iowa 1990). The evidence must "clearly" show an abuse. *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch,* 497 N.W.2d 821, 828 (Iowa 1993).

■ A new trial need not be granted on the whole case if the court's error, if any, is limited to certain issues. *Powell v. Khodari–Intergreen Co.,* 334 N.W.2d 127, 132 (Iowa 1983). We believe in this case any

damage done by attorney Jenk's letter to Judge Eads may safely be said to be confined to the alimony decision, despite the rule that "economic aspects of a dissolution decree must be viewed as an integrated whole." *In re Marriage of Behn,* 385 N.W.2d 540, 543 (Iowa 1986). We reach that conclusion for two reasons. First, the court had very limited parameters with regard to setting child support. Iowa Code section 598.21(4)(a) provides that there is a rebuttable presumption that the amount of child support resulting from the application of our guidelines is the correct amount of child support to be awarded.

Second, we believe the necessity of a new trial on any issues in this case has been greatly exaggerated. It is true the judge received a letter requesting a reduction in the temporary allowances for alimony and child support and the letter stated the reasons for the request: Richard had exhausted his inheritance, and his credit cards had no remaining credit on them. This request for reduction was essentially only a summary of the application to modify the temporary order, a copy of which accompanied the letter. The application enclosed in the letter requested the same relief and gave the same reasons for it as contained in the letter. The original of the application was filed within a few days.

Because the letter was merely cumulative of the information included in the application, which was ultimately filed in the district court, we believe Carol has not shown that the court "clearly exercised its discretion on untenable grounds or acted unreasonably" in limiting the new trial to the issue of alimony. *See Benson,* 537 N.W.2d at 762.

## V. Reinstatement of the Order for Temporary Alimony.

As previously noted, Judge Eads ordered a new trial on alimony. That order left Carol without the right to any alimony because that part of the decree was vacated. Judge Brady ruled that the tempo-

rary alimony order was abrogated when the final decree was entered by Judge Eads. Carol claims this was error and that the temporary alimony award should have been reinstated upon the vacation of the order for permanent alimony.

This raises an issue of apparent first impression for this court: whether a temporary alimony award, ordinarily terminated on the entry of a final decree by Iowa Code section 598.14, is reinstated when the permanent alimony award is vacated. Iowa Code section 598.14 provides the mechanics of obtaining orders for temporary allowances and for their modification. It provides in part: "If the order is not so modified it shall continue in force and effect until the action is dismissed or a decree is entered dissolving the marriage."

Richard argues, and the district court ruled, that pursuant to section 598.14 the temporary alimony award terminated on the entry of the dissolution decree, even though the alimony provision was later vacated. The court held the temporary order could not be reinstated.

However, as a general rule,

[i]f a judgment or decree of divorce is vacated or annulled, the marital rights, obligations, and status of the parties are revived and restored. The vacation of the decree places the parties in the status in which they were before the divorce.

24 Am.Jur.2d *Divorce and Separation* § 433, at 592 (1998) (footnotes omitted). Also, it has been said "the effect of vacating an order is the same as though it had never existed." 60 C.J.S. *Motions and Orders* § 62(6), at 108 (1969).

■ Under these principles, when a support award in a final decree is vacated, a temporary award is automatically reinstated as if there had been no final decree, unless the court's order vacating the support award shows otherwise. This holding, we believe, best serves the salutary purpose of the support provisions in our dissolution law. Accordingly, we reverse the district court order denying payment of temporary alimony pending entry of the final alimony award.

## VI. *Financial Provisions of the Decree.*

■ Carol argues that in the event we do not order a new trial we should modify the provisions of the decree concerning child support, property division, and attorney fees. Richard's cross-appeal urges us to modify or eliminate the alimony award (now set at $500 per month, following retrial).

The district court set Richard's child support at $359.75 per month, using our child support guidelines. Iowa Code section 598.21(4)(a) creates a rebuttable presumption that the guidelines yield the correct amount of child support. The primary consideration, of course, is the amount of the parties' income. Here, Carol complains the district court erred in its determination of their income. Richard disagrees. The court was "more than fair and equitable" on child support and property settlement, he claims.

The district court found Carol's net income was $1027.47 a month, and Richard's was $1598.91 a month. Based on our support guidelines, the court set Richard's child support at $359.75.

Richard's income tax returns show $7625 from his dental practice in 1995 and $12,364 from his practice in 1996. Carol argues this is inaccurate because Richard had followed an aggressive debt repayment plan that unnecessarily restricted the amount of his available draw from his practice. (Richard's dental practice debt at the time of trial was $158,221.57, which according to some of the testimony was about equal to the value of the practice.) Carol also claims that Richard had received an offer of $80,000 a year from a Wisconsin dental office—an accurate assessment of his earning potential, according to her—and Richard should be charged

611

with that amount of annual income for child support purposes.

The district court found Richard's net income, for child support purposes, to be $1598.91 a month and Carol's to be $1020.47. While these amounts might be subject to adjustment based on the arguments of the parties, our de novo review leads us to the conclusion that those amounts are appropriate, and child support of $359.75 based on our child support guidelines is correct.

We also agree with the district court's property division in the original decree and the alimony award in the decree following retrial. We affirm the district court as to those issues.

We modify on the appeal to include the amounts of unpaid temporary alimony as discussed in division V. We affirm on all other issues on the appeal and the issue raised on Richard's cross-appeal.

**MODIFIED AND AFFIRMED ON APPEAL; AFFIRMED ON CROSS–APPEAL.**