**IN THE COURT OF APPEALS OF IOWA**

No. 14-1081
Filed July 9, 2015

**MICHAEL KONZEN,**
        Plaintiff-Appellant,

**vs.**

**EMALEE GOEDERT,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Dubuque County, David F. Staudt,

Judge.


        A father appeals the court's refusal to modify the physical care provisions

of the custody decree. **AFFIRMED.**


        Matthew L. Noel of Mayer, Lonegran & Rolfes, Clinton, for appellant.

        Nathan Legue and Catherine Zamora Cartee of Cartee & McKenrick, P.C.,

Davenport, for appellee.


        Heard by Vogel, P.J., and Potterfield and Mullins, JJ.  Bower, J. takes no

part.

**VOGEL, P.J.**

Michael Konzen appeals the district court's decision, which denied his petition to modify the physical care provisions of the custodial decree. He maintains that he should have physical care of his two daughters, while the mother, Emalee Goedert, should have supervised visitation. At a minimum, he claims he should not have been ordered to have only supervised visitation. He also claims the district court incorrectly determined his child support obligation. On our de novo review, with appreciation for the district court's extensive credibility determinations, we affirm the district court's modification decision and its determination as to the current amount of child support due.[1]

## I. Background Facts and Proceedings.

Michael and Emalee are the parents of two daughters, age nine and seven at the time of the modification trial. The parties never married, though they were engaged for a brief time, and they lived together until November of 2009, when allegations surfaced that Michael was sexually abusing the girls. Emalee moved out of the house, and a department of human services (DHS) investigation was undertaken. An examination of the girls did not reveal any physical signs of abuse, though both girls told investigators that Michael "poked" them in the crotch and they were "not supposed to tell." The DHS investigation

---

[1] Emalee, through counsel, moved for leave to amend the appendix filed in this case, noting pages from the district court's November 2, 2010 decision were missing from the appendix. Emalee sought leave to file a supplemental appendix that included the full November 2, 2010 district court ruling. Having considered the record in this case, we grant the motion and consider the supplemental appendix to be filed as of the date the motion was filed.

resulted in a "founded" determination, but that decision was appealed, and after Michael negotiated with the State, the finding was changed to "not confirmed."

During the pendency of the DHS investigation, Michael filed an action for physical care of the children. In response, Emalee sought a temporary injunction, which issued on February 18, 2010, preventing Michael from seeing the children. Michael sought to dissolve or vacate this injunction, but after a hearing, the court denied Michael's request on April 9. However, on April 26, 2010, the court entered a stipulated order on temporary matters, which provided the parties would engage in therapeutic reunification between the children and Michael through a counselor. It also set the child support at $694.00 per month.

The case proceeded to a trial in October 2010; however, before the trial was complete, the judge urged the parties to settle, and after meeting with the parties, a judge-mediated settlement occurred. The court memorialized the parties' agreement in an order filed November 2, 2010. In the order, the court provided that Emalee would have physical care subject to Michael's visitation. The court also determined Michael was required to pay child support and ordered the parties to submit income information for the court to calculate the appropriate amount of support under the guidelines, after which the order would be amended. The court entered a separate visitation order that outlined how the children were to be reintroduced to Michael—through therapeutic reintegration with Andrea Beacham, J.D.—and Michael was to receive individual counseling with Marc K. Wruble, Ph.D. After the first meeting between Michael and the children, Ms. Beacham was to set a schedule for future visits. The court stated the order was to memorialize the parties' agreement and "address initial visitation

issues that are expected to be reassessed at a later point in time." The court directed the therapists to present the court with a report at the expiration of the services, or at a minimum in three months.

The court entered a separate order on December 20, 2010, entitled, "Addendum to Judgment re: Custody and Visitation," in which the court—as anticipated in the November 2 order—calculated then set Michael's child support obligation at $555.00 per month. It further provided the percentage of uncovered medical expenses for the children that each parent was obligated to cover.

After receiving reports from Ms. Beacham and Dr. Wruble, the court filed a subsequent order on April 22, 2011, which provided it was an "addendum to the Court's previous orders regarding custody, visitation, and child support. It shall serve as the final order regarding the petition filed herein." The court ordered all counseling sessions for the children would cease, all interactions between the children and Emalee's mother[2] would be subject to the agreement of the parties and supervised by Emalee, the parties would now share physical care of the children equally, and no child support would be paid.

When the district court denied Emalee's posttrial motion, she appealed, and the appeal was transferred to this court. *See Konzen v. Goedert*, No. 11-1028, 2012 WL 1859931, at *1 (Iowa Ct. App. May 23, 2012). Finding the judge should have recused herself and refrained from issuing further orders involving this family after participating in settlement negotiations, our court "vacated all the

---

[2] It was Emalee's mother who first brought the sexual abuse allegations made by the children to Emalee's attention, and Michael insists that the maternal grandmother planted the abuse allegations in the children's minds.

orders and judgments issued after the October 26 settlement conference—except the November 2, 2010 'judgment re: custody and visitation.'" *Id.* at *4.

During the pendency of the appeal and before procedendo was issued, the parties continued to operate under the district court's April 22 order providing for joint physical care. Procedendo was issued on August 29, 2012, after the supreme court denied further review. Physical care of the parties' children returned to Emalee, who denied Michael contact with the children, assuming the November 2 order providing supervised visitation was to be followed. On August 31, 2012, Michael filed an "Emergency Application for Visitation and Physical Care." After a hearing, the court denied the application in December 2012, finding it lacked jurisdiction but noted the parties had agreed to voluntary supervised visitation between Michael and the children. It was noted in the order that Michael would be filing a petition to modify the physical care provisions of the November 2, 2010 order, and Michael did file his petition for modification of custody, child support, and visitation on February 14, 2013.

During the pendency of the modification action, counsel for Emalee also filed a notice to withhold income for child support, putting Michael's employer on notice that the current monthly support obligation was $555.00 and past due support of $111.00 monthly should also be withheld, for a total monthly obligation of $666.00. However, Michael was laid off from his job in May of 2012, so the support obligation was taken out of his unemployment benefits until those ran out. After losing his benefits, Michael worked for his cousin on a cash basis doing various jobs, and Michael failed to pay any further amount towards child support up to the point of the modification trial.

Michael's modification petition proceeded to a seven-day trial in January and February 2014. The court issued its decision June 4, 2014. In that decision the district court stated:

> It should be noted for the record that the parties agreed, given the unique nature of the procedural history of this case, that evidence of events that occurred prior to the final ruling issued by Judge Ackley shall be considered in reaching a decision on this petition for modification. Both parties acknowledge that it is typically the rule that events occurring prior to the decree or final order in family law cases will not be considered at the time of trial on a petition for modification. Here, the parties have agreed that the Court should take into consideration the events that led up to the final order entered by Judge Ackley on November 2, 201[0]. The court has agreed to listen to evidence concerning events prior to the November final order as it seems apparent that the history of this couple requires a review of their situation as a whole. The court does intend to rule as to whether a substantial change in circumstances has occurred since the November order utilizing some evidence that occurred prior to November 2, 201[0].

After reviewing all the evidence presented and making extensive credibility findings, the district court denied Michael's petition, concluding "[Michael] has failed to prove that there has been a substantial change in circumstances since the entry of the original decree." In addition, the court found "that [Michael] has failed to show that joint physical care would be an appropriate modification even if he had shown that a substantial change in circumstances had occurred."

While the court rejected Michael's attempt to modify the physical care of the children, the court did modify the visitation arrangement to provide that future visitation between Michael and the children will be supervised by a relative of Michael's within the third degree of consanguinity. At no time were the children to be left in Michael's care without supervision. The court set a schedule for Michael's visitation to include Wednesday evenings, alternating weekends (the

order provided the children can stay overnight with Michael's mother or another relative of Michael's that Emalee approves of and Michael is not allowed to stay overnight or participate in bed time[3] or bath time[4] activities), and alternating holidays. The court warned any violation of the visitation conditions would be "met with severe sanctions." The court denied trial attorney fees and found Michael had willfully and intentionally failed to pay his child support obligation since the entry of the prior court of appeals' opinion.

From this order Michael appeals.

## II. Scope and Standard of Review.

Because a petition to modify the custodial provisions of a prior decree is heard in equity, our review is de novo. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Precedent has little value as we must evaluate the appeal in light of the unique circumstances of each case. *Id.* However, we do give deference to the district court's factual findings, especially its credibility determinations, "[b]ecause [the] trial court was present to listen and observe the witnesses." *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). Our paramount consideration is the best interests of the children involved. *In re Marriage of Hoffman*, ___ N.W.2d ___, ___, 2015 WL 2137550, at *4 (Iowa 2015).

---

[3] The children had alleged that Michael would touch their "private parts" when he would scratch their backs as he put them to bed.
[4] There were allegations that Michael would shower or bathe with the children and that everyone would be naked.

### III. Physical Care and Visitation.

The law guiding the modification of the physical care provisions of a prior decree is well-established in Iowa:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well-being.

*Id.* at *5. It is a heavy burden for the person seeking modification to carry because "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.*

Michael contends the evidence he presented was sufficient to satisfy the standard to modify the prior decree to place the children in his physical care and order Emalee to receive counseling regarding her attitude toward the children. He points out he testified to Emalee's mother's interference and "meddling" in his and Emalee's lives and the mother's false allegations in the past regarding their care of the children. The court discounted Michael's testimony regarding the interference of Emalee's mother in light of the fact that neither party called the mother to testify at trial and no expert evaluating this case ever spoke with Emalee's mother. There was also no independent evidence the children were persuaded or coerced by Emalee's mother or anyone else to make false accusations of sexual abuse against Michael. The court would have had to

accept Michael's word alone that such a plot existed against him, and the court had already concluded Michael lacked credibility.

Next, Michael directs our attention to the expert testimony he offered from Dr. Wruble, Ms. Beacham, William S. Logan, M.D., and Carroll D. Roland, Ph.D. Dr. Wruble and Ms. Beacham provided services to Michael and the children following the November 2, 2010 decree. Dr. Wruble provided counseling to Michael and Ms. Beacham supervised the visits between Michael and the children. Ms. Beacham testified she never saw any fear or apprehension from the children when in Michael's presence as she would expect if there had been sexual abuse. However, the district court appointing Ms. Beacham to the case directed that she was not to assess the credibility of the allegations or discuss the allegations with the children as this was to be left to the children's therapists.

Dr. Wruble did not do a full workup on Michael's risk of sexually offending, but he did perform a screening assessment. Based on the testing that was performed, Dr. Wruble determined Michael had a very low risk of sexual offending. Dr. Wruble did meet with Michael and the children on six or seven occasions and did not see any behaviors in the children that caused him any concern, nor did he see any kind of grooming behavior by Michael. But again, it was not within his assignment from the court to ascertain the veracity of the children's allegations. Dr. Wruble did disagree with the victim-based counseling that had been provided to the children through the DHS because it starts with the assumption the abuse occurred. He would instead suggest safe-harbor counseling for the children.

Michael hired Dr. Logan, who performed a sexual offender evaluation based on an interview with Michael and a review of the relevant information in this case. Dr. Logan found no indication that Michael had a history of sexual offending or would be likely to commit incest with his daughters. He also offered his evaluation of the DHS interviews with the children and indicated he thought the children's responses were rehearsed or coached, or the interviews were conducted improperly. Again, Dr. Logan never met Emalee or her mother, or the children in this case.

Finally, Michael directs us to the testimony from Dr. Carroll Roland, whom the district court appointed in this modification trial to do an assessment of the children's mental health and make a recommendation as to whether counseling was required, and if so, what type of counseling. Dr. Roland concluded the children were not in need of on-going counseling and concurred in Dr. Wruble's concern about victim-based counseling. Dr. Roland conducted testing on the children to determine their parent of choice at two different times during the pendency of this case. While the younger child consistently chose Emalee at both testing periods, the older child's scores showed a deterioration in her relationship with Michael between the testing periods. Dr. Roland surmised this was likely due to limited contact with Michael, continued victim-based counseling, and degrading comments by Emalee's family. While Dr. Roland stated this pattern would likely continue if the current custody arrangement remained unchanged, he did not recommend shared care in light of the likelihood of future allegations of sexual abuse.

Dr. Roland also gave both parents the Minnesota Multiphasic Personality Inventory test to measure mental health and both results were in the normal range. In addition, Michael was given a child abuse potentiality test, which measures the extent to which he identifies with characteristics similar to those who are known to physically abuse, but not sexually abuse, children, and the results indicated he did not have significant indications of characteristics similar to known child abusers.

Michael essentially argues that the district court ignored the vast weight of the evidence when it denied his modification petition. He claims his evidence was based on independent observations by highly qualified professionals, some of whom were appointed by the court, and this evidence demonstrates that he did not have any sexually inappropriate contact with his children and the children's current environment is toxic.

The district court did criticize Michael's experts for relying solely on reports and conclusions provided by Michael and for failing to meet with Emalee or her mother. Because the court disagreed with Michael's contention that Emalee's mother had masterminded the sexual abuse allegation, the court disregarded the experts' concerns about victim-based counseling. Because of the lack of evidence to support a plot to fabricate the allegations and because the court concluded the children were continuing to show the effects of the abuse they alleged, the court ordered continued counseling for the children per the DHS recommendation. Ultimately, the court's decision, and its rejection of the opinion of these experts, boiled down to the court's determination that Michael's testimony lacked credibility.

The court found Michael was untruthful when it came to reporting his income following his May 2012 job loss, and the court was troubled by Michael's refusal to pay child support. The court found Michael's explanation regarding a 2008 incident at Wisconsin Dells, at which Emalee's niece accused Michael of inappropriately touching her, lacked credibility.[5] The court found the niece's testimony, along with the testimony of the niece's friend and family members, to be consistent, credible, and truthful. The court also concluded Michael lied to the investigating police officer who questioned him about this incident during the DHS investigation.

The court concluded Michael was lying regarding the incident in which the older child stated Michael showed her portions of her interview at the child protection center and then berated her about the statements she made in the interview. While the court noted Michael did voluntarily submit to and pass a polygraph examination as to allegations made by the youngest daughter, the court found Michael failed to acknowledge to the examiner that he had two daughters and polygraph examinations are unreliable. Finally, the court noted Michael's testimony regarding his involvement with his new girlfriend, who had

---

[5] In August of 2008, Michael, Emalee, and the children attended a family vacation in Wisconsin Dells with Emalee's family. Emalee stayed at the condominium with the children, while Michael went to the waterpark with some of Emalee's family including Emalee's eleven-year-old niece and the niece's friend. The niece alleged that while the group was waiting in line for a ride, she repeatedly felt Michael's fingers in the back of her swimming suit, which made her uncomfortable, and she tried to inch away. Also, while in line, the niece testified Michael told her the two of them should sneak into the hot tub alone that night after hours. The niece also remembered Michael making a comment about liking all "pussies." On the way back from the waterpark, the niece testified Michael aggressively slapped her butt, and her friend, who witnessed the slapping thought the act was sexually suggestive. The niece told her friend about the comments and the friend became scared and called her father to come pick her up. Michael was asked to leave, and he, Emalee, and the children left that night.

just turned eighteen when she moved into Michael's house after knowing him for a short period of time, lacked credibility.[6] The court concluded it was clear Michael had been providing his underage girlfriend with alcohol and both of them had attempted to mislead the court into believing that their romantic relationship did not begin until after the girlfriend moved into Michael's home.

Conversely, the court found Emalee's testimony very credible, particularly her testimony that the period of shared physical care when the case was previously on appeal did not go well. The children made additional accusations of sexual abuse during this period, and Emalee testified Michael was manipulative and controlling. The children's school principal and the younger child's teacher testified that in December 2013 the younger child told her teacher that she had to go see her dad the next day and that "he was going to 'F' her." One of the counselors the girls saw following the termination of the joint physical care arrangement testified the older girl reported Michael was again inappropriately touching her. The girls' counselors, based on their therapy with the children, were uncomfortable with Michael having unsupervised contact with the children. In addition, another one of the children's counselors, Jennifer Hoyer, testified that the children displayed violent or aggressive play when the topic of Michael was brought up. After meeting with the children on a number of occasions, Hoyer testified she told the parties that she now believed that sexual abuse had occurred.

---

[6] The court also found that Michael's girlfriend's testimony regarding her relationship with Michael, lacked credibility.

Ultimately, the court determined Michael had not satisfied the heavy burden to justify modifying the physical care of the children—specifically concluding Michael did not prove a substantial change in circumstances.

> Since the entry of the decree, the only evidence of change would be the joint physical custody participated in by the parties prior to the Court of Appeals' opinion. The court finds [Michael's] testimony to be less than credible. It was obvious to the Court that at times he was misleading and lying to the Court. His testimony concerning his version of any occurrences concerning the custodial relationship during the joint physical care period would be found to be less than credible. [Emalee's] testimony was very credible concerning all of the events which would include the joint physical custody period. [Emalee] testified that joint physical custody period as having not worked very well. The Court finds that [Michael] has failed to show that joint physical care would be an appropriate modification even if he had shown that a substantial change in circumstances had occurred.

We agree with the district court's assessment. The conditions that existed between the parties at the time of the modification trial are the same that existed at the November 2, 2010 order. Sexual abuse allegations had been made against Michael, and Michael vehemently denies the allegations. The children continue in therapy to help them deal with issues surrounding the allegations. The only changes that have occurred include a brief period of joint physical care while the prior appeal was pending and Michael's new relationship with his live-in girlfriend. The court found Michael's testimony that the period of joint physical care went well to lack credibility and likewise discredited Michael's and his girlfriend's testimony regarding their living arrangement.

> A trial court deciding dissolution cases is greatly helped in making a wise decision about the parties by listening to them and watching them in person. In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented.

*In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation and internal quotation marks omitted).  Accepting the district court's credibility assessments, as we must due to the district court's ability to see and assess the testimony first-hand, we agree there has not been a substantial change in circumstances to justify modifying the physical care in this case.

Michael also claims the court should have, at least, ordered unsupervised visitation.  With respect to modifying the visitation conditions of a prior decree, the party seeking the modification must prove "that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children."  *In re Marriage of Brown*, 778 N.W.2d 47, 51–52 (Iowa Ct. App. 2009).  This is a less demanding burden and requires a less extensive change in circumstances to justify the modification.  *Id.* at 51.

Here, the district court did find Michael satisfied the burden to modify the visitation arrangement:

> At the time the decree was entered, supervised visitation with nonfamily members was the contemplated result.  [Michael] has successfully participated in supervised visitation both following the entry of the original decree and since the filing of the Court of Appeals' opinion.  The court does conclude, however, that during the period of joint physical custody in which [Michael] was left alone with the minor children, allegations surfaced of continued inappropriate behavior.  The testimony from various therapists and counselors reflects that the children remain affected by the abuse they allege.  Their statements during counseling reflect their continued awareness of abuse.  The record reflects that at the very least [Michael] has behaved appropriately with his children when supervised.  The court believes that the supervision could be provided by family members of [Michael].  The court has no reason to believe that [Michael's] family members have any desire to violate a court order.  The court does find that a material change in circumstances has occurred concerning visitation.  The material

> change being that [Michael] has successfully participated in therapy and counseling and has successfully participated in supervised visitation for an extended period of time. The court finds that it would be in the best interests of the children to be allowed visitation with their father supervised by relatives of [Michael] at all times.

Michael claims he should be granted unsupervised visitation because there has not been a founded abuse report against him and he has participated in numerous supervised visits with no incidents. He claims there should be at least a way that he can progress to unsupervised visitation. He asserts there is just no evidence to justify ordering the visits to be supervised "for the next 11 years."

We again defer to the district court's finding of fact that things did not go well when Michael was allowed unsupervised time with the girls during the period of joint physical care when the prior appeal was pending. New allegations of sexual abuse surfaced, and the district court determined Emalee was credible in her description that Michael became manipulative and controlling. We thus conclude that the district court was correct in determining unsupervised visitation would not be in the children's best interests.

**IV. Child Support.**

Next, Michael claims the district court was incorrect when it determined Michael was under an obligation to pay child support in the amount of $555.00 per month. Michael notes that the November 2, 2010 order did not specifically provide for any amount of child support, instead stating that Michael was to pay child support "in an amount to be determined." The court went on to require the parties to submit their most recent paystub with an affidavit so that the court could calculate the child support guideline amount. The order requiring Michael to pay $555.00 monthly in child support was not filed until December 20, 2010.

Because the prior court of appeals decision vacated all orders after the November 2, 2010 judgment re: custody and visitation order, Michael contends he cannot be required to pay $555.00 per month.

The only other order of the court establishing child support was filed April 26, 2010, in the "Stipulated Order on Temporary Matters." In this order the child support amount was set at $694.00 per month. Michael contends, however, that the November 2, 2010 order ceased any temporary child support order. Thus, he maintains that he has not had a child support obligation since the court entered the November 2, 2010 order.

Emalee first contends Michael did not preserve error on this claim because he failed to file a motion under Iowa Rule of Civil Procedure 1.904(2) when the district court failed to address this claim in the modification decision. Because we conclude the district court did address this claim in its modification decision, we reject Emalee's error preservation argument.

She also claims when the prior appeal decision vacated all orders entered after November 2, 2010, Michael's child support reverted to the temporary order amount of $694.00 per month established in the order on temporary matters as this child support order remained in effect having been field before the November 2 order.

With respect to temporary orders, Iowa Code section 600B.40A (2013) provides:

> Upon petition of either parent in a proceeding involving support, custody, or visitation of a child for whom paternity has been established and whose mother and father have not been and are not married to each other at the time of filing of the petition, the court may issue a temporary order for support, custody, or visitation

of the child. The temporary orders shall be made in accordance with the provisions relating to issuance of and changes in temporary orders for support, custody, or visitation of a child by the court in a dissolution of marriage proceeding pursuant to chapter 598.

Iowa Code section 598.11(2) provides for temporary orders to "continue in force and effect until the action is dismissed or a decree is entered dissolving the marriage." In support of her claim that Michael's support amount reverted to the amount set in the temporary order, Emalee cites to the case of *In re Marriage of Wagner*, 604 N.W.2d 605, 610 (Iowa 2000), where the supreme court determined a temporary spousal support order was reinstated when the final decree was vacated. However, this case is factually distinguishable since here the decree of November 2, 2010, was not vacated in the prior appeal decision but was the only order left standing.

By entry of the November 2, 2010 order, the temporary child support order was no longer enforceable prospectively, though it was enforceable for the child support that had accrued to that point. *Bork v. Richardson*, 289 N.W.2d 622, 624 (Iowa 1980) ("[N]o new obligations will accrue under the temporary order after dismissal or decree; it does not proscribe the collection of such amounts already accrued."). Therefore, the temporary order cannot be relied upon to set Michael's child support obligation following the November 2 order.

However, the November 2, 2010 order did established an obligation for Michael to pay child support:

> Petitioner, Michael Konzen, *shall be required to pay child support* for the benefit of the minor children in an amount to be determined. The parties shall submit, within thirty days, the parties' most recent paystubs to the Court with an affidavit as to statutory deductions permitted for purposes of calculating the incomes on the Supreme

> Court guidelines. Once the Court receives the information, this judgment will be amended to represent the appropriate amount of support.

(Emphasis added.) This order remained in effect following the prior appeal, and therefore, Michael's contention that he has not owed child support since the November 2 order is wholly unfounded. Michael's obligation to pay child support was established when this judgment was entered. The fact the record simply lacked current paystub information, such that the mathematical computation could not be completed at that time, does not take away from the order's enforceability.

The court's direction for the parties to submit their paystubs and affidavits was simply the mechanism the court used to obtain the required information so that the specific amount could be calculated. The court gave the parties time to comply with providing the necessary evidence. Calculating the amount due was simply a matter of plugging the income figures of the parties into the statutory formula and supplementing the November 2 judgment with the missing figure.

We agree with the district court's conclusion in the modification decree that Michael owed $555.00 per month starting November 2, 2010, except for the period of shared physical care. We therefore affirm that portion of the district court's decision.

**V. Appellate Attorney Fees.**

Emalee requests appellate attorney fees. The award of appellate attorney fees rests in our discretion, and we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *In re*

*Fiscus*, 819 N.W.2d 420, 425 (Iowa Ct. App. 2012). We also consider the relative merits of the appeal. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In light of Emalee's obligation to defend the district court's modification decision and the merits of the appeal, we award her $18,000 in appellate attorney fees.

## VI. Conclusion.

In light of the district court's extensive credibility determinations, we affirm the custodial and visitation provisions of the modification decree. We also affirm the district court's decision concluding Michael is obligated to pay child support in the amount of $555.00 per month, except for the period of joint physical care. Emalee is awarded $18,000 in appellate attorney fees.

**AFFIRMED.**