# IN THE COURT OF APPEALS OF IOWA

No. 14-1293
Filed July 9, 2015

IN RE THE MARRIAGE OF KIMBERLEY SUE BAKER
AND RANDALL LEE BAKER

**Upon the Petition of**
**KIMBERLEY SUE BAKER,**
        Petitioner-Appellant,

**And Concerning**
**RANDALL LEE BAKER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Richard G. Blane II,

Judge.


        A former wife appeals the division of property as part of a dissolution

decree. **AFFIRMED.**


        Elizabeth A. Varnon of Balduchi Law Office, Des Moines, for appellant.

        Karmen Anderson of the Karmen Anderson Law Offices, Des Moines, for

appellee.


        Considered by Tabor, P.J., and Mullins and McDonald, JJ.

**TABOR, P.J.**

Kimberley (Kim) Northway, formerly Kim Baker, appeals the district court's distribution of property as part of the decree dissolving her marriage to Randall Baker. Kim challenges the district court's determination she was not a credible witness and contends the house Randall received as a gift from his father was marital property. She also contests the court's decision on attorney fees and court costs.

Because credibility determinations rest largely with the district court, we defer to its critical assessment of Kim's testimony. We also conclude the district court properly applied the factors concerning gifted property in awarding the real estate to Randall, with limited reimbursements to Kim. Finally, we affirm the district court's denial of attorney fees and even split of the court costs.

I.      **Background Facts and Proceedings**

Kim and Randall were married in May 2012, after a decade of maintaining an "on and off" relationship. They lived together in a house owned by Randall's family.

On October 9, 2012, Richard Baker, Randall's father, conveyed the house to Randall for no consideration. Richard intended for the house—valued at $54,000—to be part of Randall's inheritance. Nine days later, on October 18, Randall signed a quitclaim deed to the house listing himself and Kim as joint tenants with full rights of survivorship. Randall testified the reason he conveyed the house to himself and Kim in joint tenancy was so Kim would not "end up on the street" if something happened to him. On October 26, 2012, eight days after

Kim became a joint owner of the house, Randall was arrested for domestic abuse assault against Kim, and Kim filed for a no-contact order against him. Kim and Randall have been separated since that time. Kim has had sole possession of the house since Randall's arrest.

After obtaining sole possession, Kim contracted with James Blake to upgrade the house. Kim claimed she and James were not in a relationship at the time she contracted with him to make the home improvements, but by the time of the dissolution trial, Kim and James were engaged to be married. Kim also claimed she agreed to pay James $5000 for work done on the house, and had paid him $2000 at the time of dissolution. Witness Ronald Thomas, who worked at the house, contradicted Kim's estimate—placing the value of the improvements at only $1500. Ronald also testified that Kim sold Randall's personal property valued at $800.

The house has been twice placed in a tax sale since Kim took sole possession, and Kim paid $574 in 2013 for the tax redemption. At the time of dissolution, $1452 was owed for the redemption from the 2014 tax sale.

Kim also requested the district court award her possession of the couple's dog, which cost $300. Kim claimed the dog was a gift to her from Randall, while Randall maintained the dog was purchased for both parties.

The district court found Kim was not a credible witness. The court awarded the house to Randall, but ordered that he repay Kim $574 for the tax redemption and $1500 for the improvements. The court awarded Kim ownership of the dog, but ordered her to pay $150 to Randall for half the dog's purchase

price, as well as $800 for the personal property she sold, and past-due utilities on the house.

Kim asked the district court to hold Randall responsible for her attorney's fees as well as all court costs. Kim receives $721 per month from Supplemental Security Income (SSI) and also received several installment payments in excess of $3000 from SSI. Ronald testified Kim also collected between $95 and $400 per month in rental income from people who she allowed to stay at the house. Randall earns approximately sixteen dollars per hour as a truck driver. Randall testified he had not been working regularly due to adverse weather conditions. Taking into consideration each party's ability to pay, the district court ordered Randall and Kim to pay their own attorney fees and ordered each to pay half the court costs. Kim filed this appeal.

## II.       Standard of Review

We review a dissolution-of-marriage proceeding de novo, as it is tried in equity. *In re Marriage of Wagner*, 604 N.W.2d 605, 608 (Iowa 2000). We will disturb the district court's ruling only when there has been a failure to do equity. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

## III.      Analysis

## A.       Credibility of Witnesses

Kim starts her appellate argument by disputing the district court's finding that she was not credible in her testimony. She contends the court had more cause to disbelieve other witnesses, specifically Randall Baker and Ronald Thomas, who testified on behalf of Randall.

Kim argues the district court should have scrutinized Randall's testimony in light of his conviction for filing a false police report, his multiple dismissed reports of domestic abuse against Kim, and his previous felony conviction. Kim contends the district court mischaracterized the no-contact order as a tactic for her to gain a personal advantage over Randall, though the order followed Randall's removal from the house for domestic abuse assault. Kim also questions why the court credited Ronald's testimony over her own despite the fact he was previously convicted of conspiracy to commit robbery. Kim insists Ronald's testimony regarding the value of the home improvements was unsupported by any evidence.

On the credibility issue, Randall points out that Kim is not without her own record of untrustworthy behavior. He highlights her admission to stealing items from Walmart for the past ten years. Randall also suggests Kim lied about the house being burglarized to cover for the fact that she sold his personal belongings that remained there. Randall argues the district court was in the best position to assess credibility.

In equity cases appellate courts give weight to the fact findings of the district court, especially when considering the credibility of witnesses, but are not bound by those determinations. Iowa R. App. P. 6.904(3)(g). We defer to the district court's credibility calls because that judge has the opportunity to observe the witnesses in person before reaching his or her evaluation of their truthfulness. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). Factual disputes that depend on the credibility of witnesses are best resolved by

the district court. *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996).

The district court saw and heard contradictory testimony from the parties and ultimately disbelieved Kim's testimony on key points. The court was aware of the witnesses' biases and criminal records in sorting through their different versions of events. Although our review is de novo, only in rare instances would we substitute our own credibility determinations for those of the district court. *Cf. State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993) (in the context of criminal trials, credibility determinations are within the purview of the jury and will not be disturbed unless the testimony of a witness is so self-contradictory, inconsistent, lacking in detail, or borderline absurd that it should be deemed a nullity by the court). We see nothing in this record that leads us to disagree with the district court's determination that Kim was not a credible witness.

## B.    Equitable Division of Property

Kim argues the district court erred in not dividing the house as marital property. Kim believes she should be awarded half the value of the house because she and Randall resided together in the house for years before their marriage. Kim argues that not dividing the house is inequitable because she was a joint owner of the house, contributed to its upkeep as a homemaker, paid the taxes and utilities on the house, and has special needs due to her mental health issues and fixed income. Additionally, Kim testified that she had nowhere else to live at the time of trial.

Iowa Code section 598.21(5) (2013) governs the division of marital property in a dissolution action. That section states "[t]he court shall divide all property, *except inherited property or gifts received . . . by one party*, equitably between the parties . . . ." Iowa Code § 598.21(5) (emphasis added). "Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable . . . ." Iowa Code § 598.21(6).

If a marriage lasts a very short time, the claim of a party to inherited or gifted property by the other during the marriage is minimal at best. *In re Marriage of Liebich*, 547 N.W.2d 844, 850 (Iowa Ct. App. 1996). Placing gifts received by one spouse into joint ownership is not a conclusive factor in deciding whether the property should be divided as a marital asset. *Id*. at 851. The court is permitted to divide inherited or gifted property only if equity demands. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

**1. The House Was Not Subject to Division.**

Kim does not dispute that Richard transferred the house to his son Randall as a gift. If that were the only transfer of the house, section 598.21(6) would exempt the house from division as a marital asset unless not dividing its value would be inequitable. But we also must consider what effect, if any, Randall's action of executing a quitclaim deed to Kim and himself as joint tenants has on the question whether the house should be divided under section 598.21(5).

A transfer of property into joint tenancy where one party furnishes all the consideration is not presumed to be a gift to the other party of one-half the interest in that property. *In re Marriage of Hoffman*, 493 N.W.2d 84, 89 (Iowa Ct. App. 1992). The intent of the donor and the circumstances of the gift control whether the gift is to be set off in the dissolution. *Id.* "The form of the acknowledgment, i.e., joint tenancy, is not controlling." *Id.* Property belonging to one party need not be divided when a transfer of property rights is made simply for estate planning purposes. *See In re Marriage of Bishop*, No. 02-0174, 2003 WL 1524449, *3 (Iowa Ct. App. Mar. 26, 2003). In *Bishop*, the wife sought half the value of her husband's farmland, which he had transferred to her and himself as tenants in common. *Id.* at *2. We decided the transfer had been made primarily for estate planning purposes and upheld the district court's decision not to divide the farmland, stating,

> We also find no fault with the district court's finding that the transfer of title to the farmland does not change the way the property should be treated. Joint ownership of an asset originally owned by one party in a marriage cannot be demonstrated by merely affixing the other party's name to that asset . . . "The donor must have a clear intention to pass all right, title, and dominion over the gift to the donee."

*Id.* (citations omitted).

We find Randall intended Kim to become owner of the house only in the event of his death. Randall testified he wanted to be sure she had somewhere to live if something happened to him, but he did not consult an attorney before making Kim a joint tenant. The property should not be divided simply because Kim's name appears on the title.

**2. Awarding the House to Randall was Equitable.**

Kim argues she should be awarded half the value of the house because she and Randall cohabitated there for approximately ten years before the marriage and they had been married for two years at the time of trial. But the district court found Kim and Randall ceased to have a marital relationship, for all intents and purposes, the day Randall was arrested for domestic abuse and a no-contact order was entered against him—after just five months of marriage. The court concluded the short duration of the marriage did not give Kim a strong claim to the house.

A court deciding whether failure to divide an asset would be an inequitable result must consider several factors, including:

> (1) contributions of the parties toward the property, its care, preservation or improvement;
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*See In re Marriage of Thomas*, 319 N.W.2d 209, 211 (Iowa 1982). "Other matters, such as the length of the marriage or the length of time the property was held after it was devised or given, though not independent factors, may indirectly bear on the question for their effect on the listed factors." *Id.*

While some of these factors support Kim's position, we conclude the overall circumstances mitigate against the appropriateness of dividing the value

of the house given to Randall by his father. It is true that Kim redeemed the house from a tax sale and paid for the general maintenance of the house while she had sole possession of it. But Randall paid utilities and performed general maintenance when he resided in the house. Kim did not have an independent close relationship with Richard, and Richard intended the property to be his son's inheritance. Randall had only owned the house for seventeen days before Kim obtained sole possession, and Kim and Randall were only married five months when Kim became a joint tenant. Kim has a fixed income through SSI and has benefitted from living in a house owned outright.

In the decree, the district court weighed the pertinent factors in deciding not to include the value of the gifted property in the marital estate. The court considered the parties' earning capacities, Kim's health problems, the improvements to the house, and the length of the marriage. While declining to divide the entire value of the home, the court did strive to achieve equity by requiring Randall to repay Kim for the tax sale redemption and home improvements. The court also required Kim to reimburse Randall for the personal property she sold. Because the district court treated the parties equitably, we affirm the division of property.

### 3.    Division of the Cost of the Family Pet was Equitable.

A dog is personal property subject to division in a marital estate. *In re Marriage of Stewart,* 356 N.W.2d 611, 613 (Iowa Ct. App. 1984). Kim argues she should not have to reimburse Randall half the purchase price of the couple's dog, Dazee, because he gave it to her as a gift. We agree with the district court's

determination that Randall did not purchase the dog as a gift for Kim, but as a pet for both parties' enjoyment. We affirm the court's order that Kim reimburse Randall $150 for the purchase price of the dog.

**C.     Attorney Fees and Court Costs.**

Kim asked the district court to require Randall pay her attorney fees and all court costs. The district court has considerable discretion in awarding attorney fees in dissolution cases. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983). To overturn an award, the complaining party must show the trial court abused its discretion. *Id.* The controlling consideration in the attorney fee determination is often the parties' respective abilities to pay. *In re Marriage of Michael,* 839 N.W.2d 630, 639 (Iowa 2013). We agree with the district court that because neither party is affluent or in a significantly better financial position than the other, each party should pay his or her own attorney fees and share court costs.

Kim also requests appellate attorney fees. Such an award is a matter of discretion. *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996). In determining whether to award appellate attorney fees, we consider the parties' financial positions and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* After considering these factors, we decline to award appellate attorney fees. Costs of this appeal should be equally divided between the parties.

**AFFIRMED.**