# IN THE COURT OF APPEALS OF IOWA

No. 22-0724
Filed August 3, 2022

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**S.M., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D.

Sauer, District Associate Judge.

A mother appeals the termination of her parental rights to her child.

**AFFIRMED.**

William T. Morrison, Mason City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Michael Moeller of Sorenson & Moeller Law Office, Clear Lake, attorney and

guardian ad litem for minor child.

Considered by May, P.J., and Greer and Chicchelly, JJ.

**MAY, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, A.M. On appeal, she challenges the statutory grounds for termination[1] and whether termination is in A.M.'s best interest. She also urges we should apply permissive exceptions to termination. And she claims the juvenile court erred by denying her motion for new trial. We affirm.

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. Finally, we consider any additional arguments raised by the parent.

---

[1] The mother makes a passing reference to the sufficiency of the State's efforts towards reunification. Setting aside error-preservation issues, we conclude the mother has failed to adequately develop an argument for our review. *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010) ("Moreover, passing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal.").

So we begin with the mother's challenge to the statutory grounds. The juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f) (2021). Paragraph (f) authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). Here, the mother limits her challenge to the final element, whether A.M. could be safely returned. This element is satisfied when the State proves the child cannot be safely returned to the parent at the time of the termination hearing. *See In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (discussing analogous element under paragraph (h)).

Our review of the record confirms the juvenile court's conclusion that A.M. could not be safely returned to the mother's care. The record before us paints a portrait of a child psychologically and emotionally battered at the hands of his mother. A.M., born in 2008, first came to the attention of the Iowa Department of Human Services (DHS) when he ran away from his mother's home in February 2020. At the time, A.M. reported his mother was confining him in his bedroom for long periods of time without access to a restroom. A.M. claimed the mother smashed and "drilled" ice cubes into A.M.'s face and stomach in order to wake him up. Later, A.M. reported that his mother would intentionally leave him confined in his room without any lights for long periods of time, leading A.M. to fear the dark.

And A.M. has a serious aversion to any food prepared or handled by the mother because he has a lingering fear that she will intentionally feed him spoiled food.

These details—and more—led to a DHS finding of child abuse and A.M.'s adjudication as a child in need of assistance. A.M.'s therapist also diagnosed him with generalized anxiety disorder and opined that that the mother's behavior was a significant factor in causing A.M.'s severe anxiety. After removal from the mother, A.M. was placed with his biological father, with whom he has remained ever since.

Since removal, the mother has refused to meaningfully engage in services and has shown no growth in parental ability. Most troubling, the mother has generally refused to take responsibility for her actions that led to removal. DHS workers testified that the mother has shown "no progress" in the trajectory of this case since removal. Instead, the mother places blame on the father and his wife for causing A.M.'s mental distress. The mother does not acknowledge how her behaviors detrimentally affect A.M., and instead she testified that she was "probably being too easy on [A.M.]." And the mother has not progressed beyond supervised visits. Although the mother expresses a desire for A.M. to return to her care, she has not taken any steps to address any of the underlying harm that led to A.M.'s removal—that is, behaviors which caused A.M. severe mental injury. So we conclude A.M. cannot be safely returned to the mother's care.

Next, we turn to consider whether termination is in A.M.'s best interest. We believe termination is the path forward for this child. Visits with the mother return A.M. to a state of severe anxiety. A.M. will pace around the room, avoid eye contact, and avoid physical contact with his mother. A.M. has repeatedly

expressed his desire not to be returned to his mother's care. And social workers assigned to this case all share a concern that A.M. will immediately run away if he is returned to his mother's care.

Conversely, A.M. has benefitted tremendously from placement with his father. A.M. is involved in extra-curricular activities and doing well in school. The father has received many positive comments on A.M.'s social and academic growth in school since removal. A.M. does not demonstrate the kind of anxiety responses—such as shutting down and emotional outbursts—that were common around his mother. And A.M. is successfully engaging in weekly therapy sessions, too. All this together readily confirms that termination is in A.M.'s best interest.

Next, we consider whether to apply a section 232.116(3) exception to termination. These exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). Here, the mother bears the burden of establishing a section 232.116(3) exception. *See A.S.*, 906 N.W.2d at 476.

The mother points out that the father has custody of the child and that termination would sever the relationship between the mother and A.M. We understand these references to rely on sections 232.116(3)(a) and (c) respectively. These provisions authorize the juvenile court to forego termination when "[a] relative has legal custody of the child," Iowa Code § 232.116(3)(a), or "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship," Iowa Code § 232.116(3)(c). Importantly, though, these provisions are "permissive, not mandatory." *A.S.*, 906 N.W.2d at 475 (citation omitted). "We may use our discretion, 'based on the unique circumstances of each case and the best interests

of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (citation omitted).

Like the juvenile court, we believe neither of these permissive exceptions should be applied. Although A.M. is placed with a relative, the mother has demonstrated a total inability to coparent with the father. And as explained, termination is in A.M.'s best interest. So we decline to apply section 232.116(3)(a).

Likewise, we decline to apply section 232.116(3)(c). The bond between the mother and A.M. is exceptionally weak, if existent. And, for reasons explained, we do not believe "termination would be detrimental to the child." *See id.* (citation omitted).

Finally, we address the mother's motion for a new trial. We review this claim for an abuse of the juvenile court's discretion. *In re Marriage of Wagner*, 604 N.W.2d 605, 609 (Iowa 2000). The mother claims that substantial evidence does not support the juvenile court's finding and that new evidence was discovered after trial. But for all the reasons explained above, we believe substantial evidence supports the juvenile court's decision to terminate. We also conclude that—based on the record before us—the mother has not demonstrated that newly-discovered evidence makes termination inappropriate. So we find no abuse of discretion and affirm the juvenile court.

**AFFIRMED.**