In re the MARRIAGE OF Dennis Lynn HOFFMAN and Julie Ann Hoffman,

Upon the Petition of Dennis Lynn Hoffman, Petitioner–Appellant/Cross–Appellee,

And Concerning Julie Ann Hoffman, Respondent–Appellee/Cross–Appellant.

No. 91–920.

Court of Appeals of Iowa.

Sept. 29, 1992.

John A. Stitely of William F. Olinger Law Firm, Cedar Rapids, for appellant.

Stephen B. Jackson, Cedar Rapids, for appellee.

DONIELSON, Judge.

Dennis and Julie Hoffman were married on May 27, 1973. The parties have two minor children, Karl and Jennifer. Dennis has a college degree and has been employed by Rockwell Collins as an engineer since the parties were married. Dennis earns approximately $5,144 per month, with a net monthly income of approximately $3,616.

During the early stages of the marriage, Julie worked as a beautician. Since then, Julie has allowed her beautician's license to lapse and she has worked as a veterinarian's assistant and a marketing consultant. She is currently self-employed in a horse business where she boards horses and gives riding lessons. At the time of trial, Julie was just getting the business started. She averaged $3,200 per month gross income, but has netted a negative monthly income.

Dennis brought assets into the marriage worth between $28,000 and $32,000. Dennis has received about $56,000 from the Hoffman Building Trust, a family trust, and gifts of about $62,000 from his parents. Julie brought no significant assets into the marriage.

In about 1984, the couple began to experience marital difficulties. Julie suggested they could resolve some of these difficulties by relocating. Dennis began to look for employment elsewhere, but then Julie found a house which had facilities to board and ride horses in the Cedar Rapids area. However, this house was in the $100,000 to $120,000 price range and Dennis was unwilling to make such a substantial investment. A short time after Dennis refused to purchase this house, Julie and Dennis separated.

At about the same time, Julie had been involved in an extramarital affair with a prominent business man, Mr. Kohl. Mr. Kohl subsequently purchased this house, and Julie had use of the house during the separation. When the couple reconciled, Julie suggested Dennis purchase the house from Mr. Kohl. Dennis refused, but he did purchase two horses from Mr. Kohl that Mr. Kohl had purchased for Julie.

In the past few years, Julie became increasingly involved in her equestrian "hobby." Dennis made numerous purchases to support this hobby, including a $10,000 horse, a $5,000 two-horse trailer, a $9,000 tractor and parts, and a $10,000 pickup truck to pull the trailer and haul hay. In addition, Julie purchased another horse for $1,500 from the couple's joint checking account.

Finally, Julie renewed her request to live in a home that would have stables similar to the home which Mr. Kohl had purchased. Dennis and Julie found a seven and a half acre property in Solon with a stable and a 15,000 square foot horse barn.[1] Dennis agreed to purchase this property if Julie would dedicate more time and energy to her family and less to her equestrian hobby.

The total investment in this home was about $243,000. Dennis's parents loaned him a significant amount of money to help him purchase this home, and the house is presently secured by a $103,000 mortgage from his parents. Dennis and Julie also used a $20,000 gift Dennis had received from his parents and about $113,000 equity from their prior home towards the purchase of the home. This amount did not include the additional horses, trailer and other equipment purchased for the farm and stables.

At the Solon home, Julie became even more involved with her horses. She had the help of several individuals, including

---

**1.** This "barn" is fully finished inside, including special lining for the safety of riders and horses, high intensity sodium vapor lighting similar to an indoor tennis court, fully insulated walls and ceilings, a special stereo system installed for the benefit of riders, a finished office, and an observation room with a picture window.

William Bloomhall III, a twenty-one year old son of a wealthy industrialist. Mr. Bloomhall loaned Julie money for the horse operation and later Julie became Mrs. Bloomhall. Dennis and Julie lived in the house for six months before they were separated.

On August 2, 1989, Dennis filed a petition for dissolution of the marriage.

Following a hearing, the district court entered a decree dissolving the marriage of the parties. The court placed the children in joint custody, with physical care awarded to Julie.

The court concluded the homestead which included Julie's horse business should be awarded to Julie. The court did not value the homestead, but found its value exceeded its equity. Dennis was ordered to pay the delinquent mortgage payments and delinquent taxes on the property. In light of Julie's age and ability to work, the court ordered Dennis to pay Julie $350 rehabilitative alimony each month until her death or remarriage, but in no event for longer than three years.

The court awarded Dennis certain IRAs which were attributable to gifts and inheritances. The court awarded Julie $5,000 which represented a gift she received from her family. The court concluded other gifts and inheritances had been commingled with marital property and had lost their character as gifts and inheritances.

The court awarded Julie one-half of Dennis's Rockwell International Pension Plan commencing at her age sixty-five and continuing for her lifetime. The court also awarded Julie one-half of Dennis's Rockwell Savings Plan. The court distributed the remaining marital assets between the parties.

Finally, the court concluded each party should pay his or her own attorney fees.

Both parties filed motions to amend findings and conclusions and to reconsider under Rule 179(b). Following a hearing, the court ruled, among other rulings, it did not have jurisdiction over Dennis's inheritance from his father's estate. The court determined the Hoffman Building Trust was not subject to division as a marital asset despite the fact that marital assets were used to purchase trust assets.

Dennis appeals and argues the court erred in making an inequitable distribution of property.

Julie cross-appeals. She argues the court should have divided the Hoffman Trust and several life insurance policies in its property award. She also argues the court should have granted her attorney fees and requests attorney fees on appeal. In his reply brief, Dennis argues Julie should pay his attorney fees and costs.

Custody and child support according to the guidelines are not matters appealed and this appeal is concerned only with property matters.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). On our review, we modify the district court's decree.

I. *Property Distribution.* Dennis argues the district court erred in making an inequitable distribution of property. Specifically, Dennis contends the district court erred in its failure to value the home, in its distribution of the personal property, and by including gifts in the distribution. He suggests the most equitable solution would be to sell the family home and divide the assets. He also challenges the district court's order requiring him to carry health insurance for Julie and life insurance for the children. In her cross-appeal, Julie argues the district court erred in not dividing the Hoffman Trust and the insurance policies.

■ The partners in a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa App.1991). The Iowa courts do not require an equal divi-

sion or percentage distribution. *Id.* The determining factor is what is fair and equitable in each particular circumstance. *Id.*

Upon our review of the record, we find the district court erred with regard to the division of the equity in the Hoffman property. The evidence reveals Dennis's parents contributed substantial sums of money to the real and personal property Dennis and Julie accumulated over the years. Dennis also contributed substantially to the marital unit over the years. We recognize Julie also contributed to the marital unit through her services as a homemaker. However, we do not believe the district court awarded Dennis an equitable share of either the real or personal property.

We recognize the parties are in inherently unequal positions following the divorce. Julie has only a high school education and a lapsed cosmetology license. On the other hand, Dennis is able to continue his employment as an engineer, which provides him with a healthy income, pension plans and other benefits.

However, Julie, now Mrs. William Bloomhall III, was awarded $350 a month rehabilitative alimony. She also receives $1,154 a month child support pursuant to the Uniform Child Support Guidelines.[2] Furthermore, in its property distribution, Julie was awarded a substantial share of Dennis' pension plans, which Dennis has not contested. However, without modifying the district court's distribution of the real and personal property, Julie would receive a substantially disproportionate and inequitable share of the marital assets.

■ A. The Family Home. Dennis contends the district court erred in failing to assign a value to the family home. Dennis had valued the home at $250,000, and Julie had valued it at $173,870.

The parties lived in the family home only six months before they separated. Julie's main interest in the Solon home is obviously in her equestrian business. Regardless of which value is assigned to the home, a considerable amount of the marital assets, including a $20,000 gift from his parents,

has been invested in the house and Julie's business, "Lake Meadow Equestrian Center." Dennis should be reimbursed for his contributions to these assets.

Dennis and Julie purchased the Solon home subject to the agreement that Julie would spend more time with her family than with her hobby. The evidence strongly suggests, however, that Julie did not meet her end of this deal.

We recognize the desirability of awarding the family home to the physical custodian. *See* Iowa Code § 598.21(1)(g) (1991). However, this is not a case where the children were born and raised at the Solon home. Julie and the children lived in this home only *six months* prior to the separation. We do not find it equitable to keep such a significant amount of assets tied up in the home and in Julie's business. To award the family home as well as the business to Julie simply is not equitable.

We therefore order the homestead, including the stable and the 15,000 square foot barn, be sold and order the proceeds be equally divided between Julie and Dennis. By selling the house and splitting the proceeds, Julie will still be in a position to purchase a comfortable, reasonably-priced home for her and her children. Julie, of course, may purchase Dennis's interest in the Solon home and the equestrian business if she so desires.

■ B. Personal Property. Dennis's next contention is that the district court erred in its distribution of the personal property. Dennis specifically challenges the district court's award of the furniture, appliances, gym equipment, jewelry, and the equestrian equipment to Julie. He argues the district court should have assigned a value to these items. Dennis estimates the value of the furniture and appliances at $14,000. Julie estimates the value at $2,500.

Again, a significant amount of marital assets were expended solely for Julie's benefit. We order the equestrian equipment, including the horses, truck, tractor and parts, two-horse trailer, and any other

---

**2.** Child support and alimony are not matters contested.

equipment purchased during the marriage; the furniture; the appliances; and the gym equipment be sold and the proceeds equally divided between Julie and Dennis. Again, Julie may purchase Dennis's interest in these items if she so desires.

■ We award the jewelry to Julie. Personal items, such as the jewelry, "should be permitted, as far as is reasonably possible, to remain with the person whose possessions they were during the marriage." *In re Marriage of Wallace*, 315 N.W.2d 827, 832 (Iowa App.1981).

■ C. Gifts. Dennis also argues the district court erred by including gifts and assets that were brought into the marriage by Dennis in its property distribution. Specifically, he asserts the court improperly divided monies which were not the product of any marital earning but were received from Dennis's parents as gifts.

■ Iowa Code section 598.21(1) (1991) states "the court shall divide all property, except inherited property or gifts received by one party, equitably between the parties." However, Iowa Code section 598.-21(2) (1991) provides an exception "upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." In determining whether an equitable distribution of gifts or inherited property is warranted, the length of the marriage is an important factor. *In re Marriage of Oler*, 451 N.W.2d 9, 11 (Iowa App.1989).

■ Here, Julie and Dennis were married for over eighteen years. We find the gifts given to Dennis by his parents and by the trust over the years were commingled with and transformed into marital property. Dennis admits these gifts "resulted in the *parties* enjoying certain benefits during the marriage that they could not have otherwise" (emphasis added), but argues "they are not the accumulation of the joint efforts of the parties." We do not agree the parties' joint efforts should be the controlling factor in determining whether gifts and inherited property should be subject to equitable division.

We have held a gift given specifically to one spouse and subsequently placed in joint ownership becomes a marital asset. *In re Marriage of Havran*, 406 N.W.2d 450, 451 (Iowa App.1987). Dennis clearly intended some gifts to be made available to the marital unit for its use and benefit. *See In re Marriage of Butler*, 346 N.W.2d 45, 47 (Iowa App.1984). However, we do not find the fact that these gifts given to Dennis were placed into joint ownership to be controlling.

In *In re Marriage of Butler*, we held the district court did not err by failing to set aside for the husband's benefit a sum equal to his disability award. 346 N.W.2d at 47. However, part of our decision relied upon a presumption that "[a] transfer of property into joint tenancy where one party furnishes all the consideration is presumed to be a gift to the other party of one-half interest in the property." *Id.* (citation omitted).

■ However, we now deem *Butler* to be contrary to Iowa Code section 598.21(2) (1991), which provides that gifts and inheritances are always to be retained in the dissolution by the recipient, absent a finding of inequity. More specifically, the intent of the donor and the circumstances of the gift or inheritance control whether the gift or inheritance is to be set off in the dissolution. The form of the acknowledgment, i.e., joint tenancy, is not controlling. To the extent *Butler* is contrary to this view, *Butler* is hereby overruled.

Here, the proceeds from many of these gifts were directly invested in the Solon house and in Julie's equestrian business. As we have ordered these properties sold and the proceeds divided, Dennis will receive an equitable share of these gifts.

■ D. Other Considerations in the Court's Property Distribution. Dennis also challenges the district court's orders requiring him to maintain health insurance for Julie and to maintain substantial life insurance policies for his children.

As Julie is self-employed, she is not in a position where health insurance is readily attainable. The district court limited her coverage to the next two years or until she

obtained her own coverage. We do not find this inequitable. Life insurance has been required as a mechanism for guaranteeing the support obligation imposed by the dissolution decree. *In re Marriage of Boehlje*, 443 N.W.2d 81, 85 (Iowa App. 1989). We affirm the district court's orders regarding health and life insurance.

■ E. The Trust and the Life Insurance Policies. Julie argues, in her cross-appeal, Dennis's beneficial interest in the Hoffman Building Trust and the life insurance policies which insure Henry Hoffman's (Dennis's father) life should also be subject to division under the property distribution statute.

The Hoffman Building Trust is an estate planning device of Henry Hoffman. Henry Hoffman has placed certain assets, the principal of which is a building, into an irrevocable trust. Upon Henry's death, the trust will distribute the assets one-half to his wife and one-half to his descendants. Dennis's interest as a beneficiary is contingent upon surviving his father. The life insurance policies in question list the estate of Henry Hoffman as the beneficiary.

The district court declined to include either the insurance policies or the Hoffman Building Trust, finding that even though some of the assets for the trust may have come from the marital assets, the district court had no jurisdiction over Dennis's inheritance from his father's estate. We agree with the district court.

We do not find *Lauricella v. Lauricella*, 409 Mass. 211, 565 N.E.2d 436 (1991), to be controlling. *Lauricella* involves the interpretation of a Massachusetts statute which gives the court the authorization to assign to one spouse all or any part of the estate of another. *See* Mass.Gen.L. ch. 208, § 34 (1988). In *Lauricella*, the court assigned a trust interest to a spouse where the other spouse possessed a present and enforceable right in the trust property. 409 Mass. at 216, 565 N.E.2d 436. We do not find Dennis's interest in either the life insurance policies or the trust to be present and enforceable.

The district court did not err in declining to distribute Dennis's interest in the trust

and the life insurance policies. *See In re Marriage of Muelhaupt*, 439 N.W.2d 656, 660 (Iowa 1989) (life interest from family trust should not be subject to division as marital property).

II. *Attorney Fees.* In his reply brief, Dennis asserts Julie should pay his attorney fees and costs for both the lower court and the appellate court as a way of equalizing the property distribution. Julie also asserts Dennis should pay her attorney fees and costs for both the lower court and the appellate court.

■ A. District Court Attorney Fees and Costs. In the dissolution decree, the district court ordered each party to pay his or her own attorney fees. Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App. 1983). To overturn an award, the complaining party must show the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App.1982). We do not find an abuse of discretion and affirm the district court's order regarding attorney fees and costs.

■ B. Appellate Attorney Fees. Both parties also request appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App. 1981). Given the modifications made, we deny both parties' requests for appellate attorney fees in this case.

III. *Costs.* The appendix and the exhibit appendix in this case consist of 705 pages. Much of the transcript of testimo-

ny, plus many reproduced exhibits, are embraced in the appendix. The cost certificates of appellant's attorney and the printer indicate the cost of printing the appendix was $2,680. The record indicates Julie will be contributing $644 to the cost of the appendix. However, over $2,000 of these costs remain. Where either party shall cause matters to be unnecessarily included in the appendix, we may impose the cost of producing such parts on that party. Iowa R.App.P. 15(b). Accordingly, three-fourths of the costs are taxed to Dennis and one-fourth of the costs are taxed to Julie.

We determine any other issues the parties may have raised are either covered by this opinion or are without merit.

For all reasons stated, we affirm the district court as modified.

AFFIRMED AS MODIFIED.