**IN THE COURT OF APPEALS OF IOWA**

No. 13-1876
Filed August 5, 2015

**IN RE THE MARRIAGE OF STEVEN ROSS HAECKER
AND KAREN T. BLOMME**

**Upon the Petition of
STEVEN ROSS HAECKER,**
        Petitioner-Appellant,

**And Concerning
KAREN T. BLOMME,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Scott County, Mary E. Howes,

Judge.


        Steven Haecker appeals a decree dissolving his marriage to Karen

Blomme.  **AFFIRMED AS MODIFIED.**


        S. Ross Haecker, Davenport, appellant pro se.

        Paul A. Aitken of Aitken, Aitken, and Sharpe, P.C., Davenport, for

appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

Steven Haecker appeals a decree dissolving his marriage to Karen Blomme. He contends the district court "acted with unfair prejudice in favor of Karen." He also challenges certain aspects of the property division.

## I. Background Facts and Proceedings

Haecker and Blomme married in 2000 and divorced in 2013. At trial, Haecker represented himself. He raised various issues, all relating to the division of property.

Following trial, the district court entered a decree awarding Haecker a home he brought into the marriage, granting Blomme a condominium purchased during the marriage, and valuing the homes at their 2013 appraised values of $104,590 and $174,800 respectively. The court allocated the remaining assets, including artwork created by Blomme, an annuity, and two vehicles. Each party assumed the debts in their names. The court ordered Blomme's IPERS retirement account divided pursuant to a qualified domestic relations order.

At the end of the day, the court ordered Haecker to pay Blomme half of a 2011 tax refund in the amount of $5023.50 and concluded Blomme owed Haecker $11,115.06, representing half the value of the annuity in her name. This left a net payment from Blomme to Haecker of $6091.56.

In a post-trial ruling, the court concluded Blomme should be credited for a portion of what the court characterized as her contribution of premarital funds towards the down payment on the condominium. The court found the amount of the contribution equaled her net payment obligation of $6091.56. As a result, the court found Blomme owed Haecker nothing. Haecker appealed.

## II.    *Judicial Bias*

Haecker contends the district court judge was biased against him.  He seeks a retrial before a different judge.

Haecker did not file a motion to recuse the judge, object to the comments he found offensive, or raise the bias issue at any stage of the trial.  Accordingly, we conclude the issue was not preserved for our review.  *See In re Marriage of Ricklefs*, 726 N.W.2d 359, 362 (Iowa 2007) ("Although the judge's alleged pretrial statements raise the issue of recusal, the lack of a record regarding these statements precludes us and should have precluded the court of appeals from deciding this issue.  The appellant has the duty to provide a record on appeal affirmatively disclosing the alleged error relied upon.  We have long held in cases where a party claims a judge made a remark requiring us to rule on the propriety of the remark, the remark should be contained in the record." (internal citations and quotation marks omitted)); *State v. Rodriquez*, 636 N.W.2d 234, 246 (Iowa 2001) ("The defendant has failed to state in his brief how error was preserved on this issue.  We cannot locate a motion for recusal in the trial court record, nor do we find any indication that Rodriquez ever objected to the trial judge presiding over his case.  In addition, the defendant has offered no reason on appeal as to why he did not have to preserve error on this issue by making an objection or some sort of record in the district court.  Therefore, we consider this issue waived." (internal citation omitted)); *see also* Iowa R. Civ. P. 6.903(2)(g)(1)

(requiring appellant to state how each issue was preserved for review, "with references to the places in the record where the issue was raised and decided").[1]

## II.      Property Division

Haecker also challenges various aspects of the district court's property division.   Although he raises the issue under the rubric of judicial bias, he essentially argues the property division was inequitable.[2]   In his main brief, he focuses on (A) the court's failure to value Blomme's artwork, (B) the court's finding that Blomme used premarital funds to pay for the condominium and the court's valuation of the condominium, (C) the court's valuation of Blomme's vehicle, and (D) the court's failure to set aside as premarital property his home, a grand piano, and a chandelier.   In his reply brief, he elaborates on the issues above and also asks us to revisit the district court's valuation of Blomme's annuity, the division of her IPERS retirement benefits, and the allocation of the 2011 federal tax refund.   Additionally, he suggests there was a "[p]ossible dissipation of marital assets in Blomme's bank account and Blomme "understate[d] . . . assets" to the tune of at least $5000.   We decline to consider these additional issues because they were raised for the first time in his reply brief.  *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992) ("We have long held that an issue cannot be asserted for the first time in a reply brief.").   Further,

[1] We may raise the error preservation issue on our own motion.  *See Top of Iowa Co-op v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("[T]his court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal.").

[2] In his main brief, Haecker frames the issue as follows: "Whether the fact-trier was unduly prejudiced in favor of appellee with disregard for the testimony and suppression and ignoring of the evidence of the appellant."   In his reply brief, he frames the issue as follows: "Whether fact-trier was unduly prejudiced in favor of appellee with disregard for the testimony and suppression and ignoring of the evidence of the appellant leading to mistakes defining and allocating marital assets equitably."

certain issues such as the claimed dissipation of assets were neither raised nor decided by the district court and, accordingly, were not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). We proceed to the issues raised in the main brief.

### A.    Artwork

Blomme was an art teacher and artist. She created hundreds of art pieces. Haecker argues the artwork was "by far" "[t]he most valuable asset" the parties owned. In a 2011 joint tax return he prepared, he assigned a value to the inventory of $30,900.

The court awarded the artwork to Blomme without assigning a value. On appeal, Haecker argues the court failed to include the inventory as a marital asset and contends "the art inventory in [Blomme's] possession was much higher, approaching $70,000."

The artwork created during the marriage was divisible property. *See In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006) ("All property of the marriage that exists at the time of the divorce, other than gifts and inheritances to one spouse, is divisible property."). Assuming the court failed to consider the artwork as divisible property,[3] we conclude the items should have been included. However, we conclude the court acted equitably in awarding the artwork to Blomme. *See In re Marriage of Hoffman*, 493 N.W.2d 84, 89 (Iowa Ct. App. 1992) ("Personal items . . . should be permitted, as far as is reasonably possible,

---

[3] The decree is equivocal on this point.

to remain with the person whose possessions they were during the marriage." (citation omitted)).

The real issue is whether the artwork had monetary value for which Haecker should have received a credit. We agree with the district court that it did not. Blomme testified the last time she sold a piece was in 2008. She received $200 for the piece.[4] She disputed Haecker's 2011 tax valuation of the artwork, contending the valuation was included without her knowledge or consent.

Although Haecker stood by the tax figure, he failed to have the artwork appraised and failed to present other independent evidence of its value. Under these circumstances, the district court appropriately concluded "[a]ny value that the Court put on the artwork would be purely speculative." We affirm the district court's zero-value figure for the artwork.

### B.    Blomme's Condominium

As noted, Blomme purchased a condominium during the marriage. She paid $159,500 for the property. The district court made the following findings with respect to the property:

> The down payment for the [condominium] was provided totally by [Blomme], with funds she had from a house she owned pre marriage. In 1997 she sold her residence with a profit to her of $53,750.00 (Plaintiff's enclosure 6 a 1099-S). [Haecker] never lived at the [condominium]. He did not contribute to the $31,900 down payment, see exhibit A, nor did he make any mortgage payments.

---

[4] She also may have sold a piece for $100 in 2010.

On appeal, Haecker takes issue with the court's finding that the down payment was made with premarital funds.[5]  The trial record reflects the following pertinent facts.

On direct examination, Blomme's attorney asked Blomme whether "premarital funds" were used for the purchase of the condo."  Blomme responded, "Premarital, yeah."  Counsel then asked, "There were?"  Blomme responded, "Yeah.  I used to own a house before I moved in."  She stated she used "around 20,000-something, 25-ish" of the sale proceeds to make a down payment on the condominium.

On cross-examination, Haecker introduced a tax document reflecting the premarital real estate transaction Blomme referred to.  The document stated the sale took place in 1997, three years before Blomme and Haecker married.  Blomme received gross proceeds of $53,750.

Using this tax document, Haecker engaged in the following pointed exchange about Blomme's claimed use of the premarital home-sale proceeds as a down payment on the condominium:

> Q.  And it says that you had gross proceeds of $53,000 for that.  What did you do with that $53,000?  A.  I didn't get $53,000.
> Q.  Okay.  How much did you get?  A.  I don't know.  I got, probably, say, around 25, I don't recall.
> Q.  What did you do with that money?  A.  It apparently went to the condo deposit.
> Q.  Put it in the condo ten years later?  A.  Probably.

---

[5] He contends he was not notified of the post-trial proceedings at which this issue predominated.  However, the record reveals he was served with Blomme's post-trial motion as well as the order setting hearing.

The only other documentation of the down payment or its source came in the form of a one-page disclosure statement—marked Exhibit A—listing settlement costs for the condominium. Blomme posited that the difference between the contract sales price of $159,500 and the principal amount of the loan—$127,600.00—represented her down payment on the property. This difference of $31,900 was the figure adopted by the district court as the amount of premarital funds used by Blomme to purchase the condominium.

On our de novo review, we conclude the record does not support the finding that Blomme used $31,900 of premarital funds to purchase the condominium. Blomme introduced no evidence to establish she maintained the home sale proceeds for almost a decade and used the funds to make a down payment on the condominium. *See In re Marriage of Meyers*, No. 14-0897, 2014 WL 1817148, at *2-3 (Iowa Ct. App. Apr. 22, 2015).

But, even if all or a portion of the down payment came from premarital funds, those funds had to be included in the divisible estate. *See Sullins*, 715 N.W.2d at 247 ("[T]he property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." (citation and internal quotation marks omitted)). The question then became how to consider the down payment in the property division. *See id.*

Given the paucity of evidence supporting the premarital character of the down payment and the lengthy lapse of time from the sale of Blomme's first home to the purchase of the condominium, we conclude Blomme was not entitled

to any credit for the down payment. We modify the dissolution decree to delete the premarital credit of $6091.56 in favor of Blomme.

This brings us to Haecker's challenge to the district court's valuation of the condominium. The court assigned a value of $174,800, drawn from the 2013 assessment rolls. We conclude this value was within the permissible range of evidence. *See In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007).

### C. Valuation of Blomme's Vehicle

Blomme owned a Toyota vehicle, which she valued at $7200. Haecker sought to have it valued at $12,975. The district court accepted Blomme's value. Because the court's valuation was within the range of evidence, we conclude the district court's valuation was equitable. *See id.*

The district court elected to offset the entire $7200 value of the Toyota against the appreciation of Haecker's pension "from their marriage in 2000 to his retirement in 2003." In his reply brief, Haecker suggests this disposition was inequitable. On our de novo review, we agree.

"All property of the marriage that exists at the time of the divorce . . . is divisible property." *Sullins*, 715 N.W.2d at 247. The record contains scant if any evidence of the appreciation of the pension during the three pre-retirement years cited by the district court, or the amount of the appreciation. Accordingly, we conclude Haecker was entitled to an offset of fifty percent of the asset value. We modify the decree to provide for payment of $3600 to Haecker.

### D. Haecker's Home, Piano, Chandelier

Haecker contends his home, a baby grand piano, and a chandelier were all gifts which should have been set aside to him. *See* Iowa Code §598.21(5)

(2013) (requiring the division of all property, "except inherited property or gifts received or expected by one party"). The district court declined to set aside the home, finding it "was [the parties'] marital residence from their marriage in 1997,[6] until Karen purchased the [condominium] at the end of 2006." This disposition was equitable. *See In re Marriage of Meyer*, No. 03-0879, 2004 WL 144237, at *2 (Iowa Ct. App. Jan. 28, 2004) (declining to set aside gifted home where parties resided in it for lengthy period of time).

As for the piano, Haecker testified he "paid nothing" to the owner but gave the owner's son $800 following the purchase. Haecker estimated the value at between $8000 and $12,000 but provided no documentation to support this valuation. Blomme, in contrast, testified Haecker purchased the piano for "just $300 bucks." She stated her own piano was destroyed in floods and Haecker kept the insurance proceeds.

The district court awarded the piano to Blomme, with Haecker's agreement, and assigned no value to it. We conclude the piano was not a gift to Haecker. But even if it was a gift, equity does not support setting it aside to him or assigning it the value he proposes. *See* Iowa Code § 598.21(6) (permitting division of gifted property if "refusal to divide the property is inequitable to the other party").

We are left with the chandelier. Blomme testified Haecker's sister gave it to the couple to be used in the condominium. According to Blomme, the sister told her she could have it. Based on this record, we conclude the chandelier was

---

[6] As noted, the parties did not marry until 2000.

not a gift to Haecker alone and, in any event, was re-gifted to Blomme. Accordingly, the district court's award of the chandelier to Blomme was equitable.

### III. Disposition

Based on our analysis above, we modify the property division portion of the decree to require payment by Blomme to Haecker of $6091.56 plus $3600, for a total of $9691.56, within ninety days of the issuance of procedendo. We decline Blomme's request for appellate attorney fees because she did not prevail on certain issues and her income exceeds Haecker's. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007) (vesting court with discretion to award fees).

**AFFIRMED AS MODIFIED.**