# IN THE COURT OF APPEALS OF IOWA

No. 20-0416
Filed May 26, 2021

IN RE THE MARRIAGE OF KEVIN F. BOHAC
AND CHRISTY A. BOHAC

Upon the Petition of
KEVIN F. BOHAC,
　　　　Petitioner-Appellee/Cross-Appellant,

And Concerning
CHRISTY A. BOHAC,
　　　　Respondent-Appellant/Cross-Appellee.
_____

　　　　Appeal from the Iowa District Court for Carroll County, Gina C. Badding,

Judge.


　　　　Christy Bohac appeals, and Kevin Bohac cross-appeals, the decree

dissolving their marriage. **AFFIRMED.**


　　　　Robert A. Nading II of Nading Law Firm, Ankeny, for appellant.

　　　　Jessica L. Morton of Bruner, Bruner, Reinhart & Morton, LLP, Carroll, for

appellee.


　　　　Considered by Mullins, P.J., and May and Schumacher, JJ.

**MULLINS, Judge.**

Christy Bohac appeals, and Kevin Bohac cross-appeals, the decree dissolving their marriage. Christy argues the district court erred in crediting Kevin with assets inherited from his father and failing to award her medical and dental insurance. She requests an award of appellate attorney fees. On cross-appeal, Kevin contests the spousal support award.

**I.      Background Facts and Proceedings**

The parties were married in September 1995 and at the time of the trial in this matter had two minor children. Christy was initially employed outside the home as a hair stylist but stayed home with the children following their births. Over the years, she continued to style limited family members and friends, receiving negligible income. Kevin is a nurse anesthetist and has remained gainfully employed throughout the marriage. The parties have also received income from several farm properties, including cash rent and Conservation Reserve Program (CRP) payments, as well as distributions from investments and business interests.

A large part of the dispute before the district court, and on appeal, related to funds and farmland inherited by Kevin upon the death of his father. The district court made the following factual findings regarding the inheritance and its use during the marriage.

> Kevin and his two brothers were the beneficiaries of a trust created by their father, which became irrevocable upon his death in December 2009. Although not entirely clear from the evidence presented by the parties, it appears the assets of the trust were fully distributed to the three brothers in 2016. Among the assets of the trust were 55 acres of farmland in Nebraska, which the brothers put into a limited liability company known as DGK Farms, LLC. The trust also owned a house and 40 additional acres of farmland in Nebraska. The house and five acres were deeded to one of Kevin's brothers,

and Kevin received the other 35 acres. He also received a one-third interest in a Raymond James IRA, a one-third interest in a US Bank IRA annuity, shares in Spectra Energy and Duke Energy, and $55,000.00 from a Veterans Administration life insurance policy.

Kevin sold the 35 acres of farmland in Nebraska on December 15, 2016, for $1,332,868.79. The proceeds from the sale were wired to Kevin and Christy's joint bank account that same day. Kevin immediately paid off a debt owed on a farm known as the "Kirk Farm" that he had purchased in March 2016. That payment totaled $439,281.65. Kevin then made a $36,801.37 down payment on a farm known as the "Danner Farm" that he entered into a contract to purchase on December 9, 2016, with an individual named [S.M.]. He purchased another farm known as the "River Prairie Farm" in January 2017 using $490,567.27 from the sale proceeds of his inherited farmland. The remaining proceeds were spent on March 1, 2017, when Kevin bought [his][1] one-half interest in the Danner Farm for $[359,812.50].[2]

All of these farms were titled in Kevin and Christy's names as joint tenants or in entities they jointly held. According to Kevin, however, Christy did not have anything to do with the farms. Kevin was responsible for maintaining those that were enrolled in the CRP program. He also paid the property taxes on the farms, although those taxes were paid out of the couple's joint bank account.

Kevin was not clear on where the proceeds from his other inherited assets went, specifically the shares in Duke Energy valued at $4547.67, the shares in Spectra Energy valued at $2709.67, and the $55,000.00 proceeds from the VA life insurance policy. He believed they may have funded some accounts that he held with Midwest Financial, but was not sure. Kevin did still have $20,098.00 from the [TD Ameritrade Benef.] IRA in his name at the time the dissolution trial.[3]

(Footnote omitted.) Kevin also had financial assets that he claimed were created for him as a child or gifted from his parents. During the marriage, the couple accumulated a number of farm properties, owned a shop building, and operated rental properties. At the time of dissolution, the rental properties had been sold.

---

[1] This change was made as a correction to the original decree following motions made pursuant to Iowa Rule of Civil Procedure 1.904(2).

[2] *See* footnote 1 above.

[3] References to exhibits have been removed.

The parties also held several investment accounts and insurance policies, titled separately and together.

Christy alleges the following findings of the district court were in error. Kevin was credited "$1,332,869.00 he realized from the sale of the inherited farmland from his father." Kevin's interest in the TD Ameritrade Benef. IRA was set aside to him because the source of the asset was, again, his father's estate.[4] The district court found the Danner Farm was purchased with funds realized from the sale of the Nebraska property received from the same estate. Kevin was also provided an offset of the gross amount of the funds realized from his sale of the Nebraska farmland, allegedly with no consideration of the tax repercussions, which Christy argues resulted in inequity. Additionally, Christy complains that Kevin was not required to pay for her medical and dental insurance as a part of the spousal support award. Kevin argues on cross-appeal that the district court erred in awarding Christy $5000.00 per month in spousal-support payments. Christy requests appellate attorney fees and costs.

## II.  Standard of Review

Dissolution proceedings are equitable in nature. Iowa Code § 598.3 (2019). "Our review is therefore de novo." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). On appellate review, "[w]e give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *Id.* "We will disturb the district court's 'ruling only when there has been a failure to do

---

[4] *See* discussion *infra* at pp. 7–8.

equity.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).

**III.    Analysis**

A.    Inheritance-Related Issues

The following claims all relate to division of property, governed by Iowa Code section 598.21.  Generally, "[u]pon every judgment of annulment, dissolution, or separate maintenance, the court shall divide the property of the parties and transfer the title of the property accordingly."  Iowa Code § 598.21(1).  But assets either inherited by or gifted to a party to the dissolution are subject to an exception. *Id.* § 598.21(6).

> Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

*Id.*

As a district court identifies and values property for distribution, it must set aside gifted and inherited assets.  *McDermott*, 827 N.W.2d at 678.  "The donor's intent and the circumstances surrounding the inheritance or gift are the controlling factors used to determine whether inherited property is subject to division as marital property."  *Id.* at 678–79.  Yet, "the court may still divide [an inherited or gifted] asset as marital property, where awarding the gift or inheritance to one spouse would be unjust."  *Id.* at 679.  When determining whether inequity would result, courts consider the following factors:

> (1) contributions of the parties toward the property, its care, preservation or improvement[ ];

(2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;

(3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;

(4) any special needs of either party;

(5) any other matter[,] which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the done or devisee.

*Id.* (alterations in original) (quoting *In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000)).

### 1.    *Gifting and Commingling*

Christy argues the $1,332,869.00 realized following the sale of Nebraska farmland Kevin received through his father's estate should have been considered a marital asset subject to equitable distribution.  She alleges that when Kevin deposited the funds into a jointly held account and used them to purchase assets titled jointly, the funds were commingled and the procured properties were gifted.  Kevin argues the funds were received pursuant to his father's estate and used to procure assets traceable to those funds, and thus remain separate property.

Christy's argument alleges "confusion in Iowa law" regarding division of gifts and inheritance upon dissolution.  Christy posits that a bright-line rule pronounced by this court in *In re Marriage of Butler*, 346 N.W.2d 45, 47 (Iowa Ct. App. 1984), should be controlling.  That relevant statement of law is, "A transfer of property into joint tenancy where one party furnishes all of the consideration is presumed to be a gift to the other party of one-half interest in the property."  *Id.*  But the supreme court also overruled *Butler*, specifically targeting that bright-line rule.  *See In re Marriage of Hoffman*, 493 N.W.2d 84, 89 (Iowa 1992).

> [W]e now deem *Butler* to be contrary to Iowa Code section 598.21(2) (1991), which provides that gifts and inheritances are always to be retained in the dissolution by the recipient, absent a finding of inequity. More specifically, the intent of the donor and the circumstances of the gift or inheritance control whether the gift or inheritance is to be set off in the dissolution. The form of the acknowledgement, i.e., joint tenancy, is not controlling. To the extent *Butler* is contrary to this view, *Butler* is hereby overruled.

*Id.* at 47. We see no confusion. Because the rule suggested by Christy has been overruled, her argument fails. And, given the fact that upon receiving the equalization payment ordered by the district court, she will have a net property award in excess of $1.5 million, including retirement assets, we do not find the district court's award inequitable.

### 2. TD Ameritrade Benef. IRA

Christy argues the district court erred in crediting the TD Ameritrade Benef. IRA to Kevin as an inherited asset. In the decree, the district court attempted to trace the account to Kevin's inheritance using the name the account bore in 2009, Raymond James IRA. Following post-trial motions, the district court noted its error in tracing the Raymond James IRA because that account no longer existed. The court credited the present value of the TD Ameritrade Benef. IRA to Kevin, not the Raymond James IRA. The evidence presented at trial shows the owner of the TD Ameritrade Benef. IRA is listed as "Kevin Bohac Deceased Frank Bohac DOD 12-26-09," revealing that it was another inherited asset.

Christy alleges there is no evidence linking the Raymond James IRA inheritance with the TD Ameritrade Benef. IRA. She argues it is impossible that the IRA's value in 2009, $20,746.91, would have reduced to $20,098.00 by 2019. She also argues there is no evidence showing the funds were transferred or when

the TD Ameritrade Benef. IRA was established. The district court examined the only evidence presented, records from Frank Bohac's estate showing the value of the Raymond James IRA upon his death, testimony that Kevin received one-third of that account as an inheritance, and account records revealing the owner of the TD Ameritrade Benef. IRA.

We review the evidence presented to the district court: documents from Frank Bohac's estate, testimony, and documents related to the owner of the TD Ameritrade Benef. IRA. On our de novo review of the evidence in the record, we agree with the district court that the evidence produced reveals that the source of the funds in the TD Ameritrade Benef. IRA was inherited property and should be credited to Kevin.

### 3. The Danner Farm

Christy argues Kevin failed to create a sufficient link between inherited funds and the Danner Farm purchase. She argues records do not support the district court's findings regarding the dates of the transaction or the purchase price. Kevin argues that Christy failed to rebut the evidence he presented to the district court.

The district court made the following findings related to the purchase of the Danner Farm. Kevin entered into a contract to purchase the Danner Farm on December 9, 2016, with a non-relative co-owner. He sold the inherited Nebraska farmland on December 15, 2016, and received the proceeds into a joint bank account the same day. Following that deposit, Kevin used $36,801.37 in fulfillment of the down payment toward the Danner Farm. Following post-trial motions, the

district court clarified that on March 1, 2017, Kevin spent an additional $378,750.00 to complete the purchase of his ownership interest in the Danner Farm.

Exhibit B shows that the seller calculated the down payment as $37,875.00 and total price was $757,500.00. According to Kevin's argument, he paid a total of $415,551.37 for his one-half ownership interest in the Danner Farm. One-half of the total purchase price as calculated by the seller was $378,750.00. Nothing in the record explains Kevin's apparent overpayment of $36,801.37 or tells us if it was an overpayment. Interestingly, Kevin made a second withdrawal of $36,801.37 in November 2018, the same amount that was used for the down payment on the Danner Farm. There is no explanation for the November 2018 payment in the record.

Our de novo review of the record reveals the following. Kevin testified the inherited funds were used to purchase the Danner Farm. Even though Christy insists that no contract could have been executed without earnest money on December 9, 2016, Kevin testified that all payments toward the Danner Farm were made after the inheritance money was received. The account records we have appear to corroborate his testimony. Accordingly, we cannot disagree with the district court's finding that the Danner Farm was purchased with inherited funds and should be credited to Kevin.

### 4. Tax Consequences

Christy argues the district court erred in setting aside the gross value of Kevin's inheritance and should have subtracted any and all tax liabilities from that amount. *See In re Marriage of Sterner*, No. 18-0409, 2019 WL 1057304, at *4 (Iowa Ct. App. Mar. 6, 2019). Kevin argues the gross amount was appropriate

because Christy failed to prove the amount of capital gains taxes and how they were paid, and that taxes may not result from exchanges solely in kind. *See* 26 U.S.C. § 1031(a)(1) ("No gain or loss shall be recognized on the exchange of real property held for productive use in a trade or business or for investment if such property is exchanged solely for real property of like kind which is to be held either for productive use in a trade or business or for investment.").

Christy's argument relies on a prior opinion of this court, in which the court was presented evidence regarding the amount of capital gains taxes paid following liquidation of inherited assets. *Sterner*, 2019 WL 1057304, at *4. The Bohacs' personal tax accountant testified at trial. She testified that although there were capital gains taxes resulting from the sale, the maximum rate would have been 20% but could not testify to an exact dollar amount. The accountant also testified that an $88,000.00 federal tax liability was partially due to the money from the sale moving from Nebraska to Iowa, but again, there was no testimony regarding an exact value.[5] The accountant testified that the purchase of the Danner Farm did not qualify for exchange pursuant to section 1031(a), but was not asked about any other properties purchased with inherited funds. Kevin testified that some of the purchases did quality for exchange. The district court was ultimately unwilling to find "the exact amount of that capital gain tax liability."

Our de novo review reveals that capital gains taxes resulted from the sale of the Nebraska farmland, but there is no evidence regarding the precise tax rate or method of payment. Furthermore, some of the funds were not subject to tax

---

[5] The 2016 tax return shows income taxes were paid in the total amount of $88,424.00.

because they were used to purchase land subject to exchange pursuant to section 1031(a). Finally, some portion of the income tax paid in 2016 was incurred because of the transfer of funds from the sale of Nebraska farmland into Iowa.

Although equity among the parties is our ultimate goal, "we recognize that equality need not be achieved with mathematical exactness." *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979) (quotation marks and citation omitted). Christy asks us to subtract the $78,368.00 tax paid in 2016 from Kevin's offset. But, Christy's argument itself admits that the farm-sale taxes are only some portion of that tax bill. Like the district court, we will not speculate regarding the amount of capital gains taxes paid in 2016. Speculation will not support an equitable distribution of assets. *McDermott*, 827 N.W.2d at 676.

### 5. Alleged Inequity

Christy argues the district court order crediting Kevin with the entire value of the sale of the Nebraska farmland resulted in inequity. The argument appears to rehash issues already raised, generally that the court should have found the assets were marital rather than separate property. We have already determined the funds realized from the sale of property Kevin inherited were not marital property and that awarding the inherited property to Kevin is not inequitable in this case.

### B. Spousal Support and Insurance

Christy argues the district court failed to order Kevin to pay for her medical and dental insurance. Kevin argues the district court's decision was appropriate because Christy failed to provide evidence of how much support was necessary to maintain medical and dental insurance and whether Kevin would be able to keep

Christy on his plan following the divorce. Kevin cross-appeals, arguing the trial court erred in ordering him to pay Christy $5000.00 per month in spousal support. Christy argues that award is appropriate.

Spousal support awards are governed by Iowa Code section 598.21A. The statute includes a non-exhaustive list of factors to consider when determining a support award. *Id.* § 598.21A(1).

> (a) The length of the marriage
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party of find appropriate employment.
> (f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> (g) The tax consequences to each party.
> (h) Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by either party.
> (i) The provisions of an antenuptial agreement.
> (j) Other factors the court may determine to be relevant in an individual case.

*Id.* Spousal support "is not a matter of absolute right, but depends upon the circumstances of each particular case." *In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

The district court awarded Christy traditional spousal support in the amount of $5000.00 per month "until her remarriage or the death of either party." "'The purpose of a traditional or permanent [spousal support] award is to provide the

receiving spouse with support comparable to what he or she would receive if the marriage continued.' Traditional support is ordinarily of unlimited or indefinite duration." *Gust*, 858 N.W.2d at 408 (quoting *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997)). The district court considered the twenty-four years the parties were married, Christy's time spent as a stay-at-home parent with little to no income, and the impact her twenty-four year absence from the workforce made on her ability to self-sustain. It also noted that, even if Christy were to return to hair styling full-time, her historic highest income was less than $15,000.00 a year and entitled her to traditional spousal support. In finding the value of the award, the district court considered Christy's share of the property distribution, cash settlement, and retirement accounts. Also, "Kevin has agreed to be fully responsible for all of the children's expenses," and Kevin's income and expenses provide him the ability to pay $5000.00 per month.

The district court made several additional factual findings. At the time of trial, Kevin was fifty-six and Christy was fifty-one. Kevin maintained full-time employment outside the home for the entirety of the marriage. There was no evidence that Kevin intended to stop working prior to his retirement. Christy was initially employed outside the home but stopped working to care for the parties' children. Christy continued to cut hair out of her home for a limited number of clients and earned little or no income for most of the marriage. Christy was hospitalized in 2018 for a "breakdown" and suffered further health issues in 2019 as dissolution proceedings progressed. The parties stipulated to joint legal custody and placement in Kevin's physical care with the parties sharing equal parenting time. Christy will neither receive nor pay child support. Kevin was

ordered to cover the costs for the needs and expenses of the children, including medical and dental insurance.

### 1. Spousal Support

Our review of the record reveals the district court provided a thorough and thoughtful discussion of the facts leading to its decision. Kevin was ordered to pay Christy $5000.00 per month in spousal support. Financial affidavits reveal that he will continue to net between $9000.00 and $10,000.00 monthly from his full-time job as a nurse anesthetist. That does not include income related to the real property Kevin owns. Kevin also has significant retirement assets. Although Christy could obtain employment outside the home in the future as a hair stylist, her employment history shows that her income would be minimal and insufficient to support herself or maintain a lifestyle similar to what the parties were accustomed during the marriage. *See Gust*, 858 N.W.2d at 408. Christy received the proceeds of farmland that was sold over the pendency of proceedings and nearly $1,000,000.00 in retirement assets. Kevin's earning potential, considering his full-time employment, passive income, and assets, substantially outweighs Christy's, and he is able to provide traditional spousal support. *See id.* at 411–12. Kevin asserts on appeal the district court did not adequately consider current tax consequences of the spousal support award. In its ruling on post-trial motions, the court stated clearly it was aware of the tax consequences when it set the amount of spousal support. Considering Christy's receipt of funds from the sale of farmland, cash property settlement, and award of retirement assets, an award of $5000.00 per month is sufficient to sustain "a standard of living comparable to that

enjoyed during the marriage," and it is equitable for Kevin to pay such an award, even considering the tax consequences.[6]  *Id.* at 412.

### 2. Medical and Dental Insurance Costs

Our supreme court treats "a provision in a dissolution decree requiring one spouse to provide medical support in the form of health insurance payments to the other spouse" as spousal support.  *In re Marriage of Johnson*, 781 N.W.2d 553, 557 (Iowa 2010).  In *Johnson*, our supreme court used the substantial-change-in-circumstances standard traditionally applied when appellate courts consider modification of spousal support.  *Id.* at 558–59.  Similarly, this court has used the same standard when considering a direct appeal of spousal support and medical insurance.  *In re Marriage of Kurtt*, 561 N.W.2d 385, 387–88 (Iowa Ct. App. 1997).

The district court ordered that Kevin cover the day-to-day costs of the children, including medical and dental insurance.  Christy was awarded a number of assets in the dissolution, described above, in addition to her monthly spousal support.  Our de novo review of the record reveals the spousal support awarded is sufficient for Christy to maintain her own insurance and that no further spousal support award was warranted.

---

[6] The dissent asserts that spousal support payments must terminate upon either party's death or Kevin's retirement due to tax consequences.  One party's retirement may qualify as grounds for modification of spousal support, but the specific facts surrounding Kevin's future retirement are speculative at this time.  *See Gust*, 858 N.W.2d at 418.  Generally, "future retirement is a question that can be raised only in a modification action subsequent to the initial spousal support order."  *Id.*  Should Kevin desire to petition for modification of spousal support, he may do so "when retirement is imminent or has actually occurred."  *Id.*

C.     Attorney Fees

Christy requests an award of her appellate attorney fees and that costs on appeal be assessed to Kevin.  Kevin contests the request for appellate attorney fees and asks that costs on appeal be split equally between the parties.  "Appellate attorney fees are awarded upon our discretion and are not a matter of right.  When considering whether to exercise our discretion, 'we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'"  *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020) (quoting *McDermott*, 827 N.W.2d at 687).  Christy did not prevail on any of her claims.  We have already found she received a substantial property distribution, and she receives meaningful spousal support.  We decline to award her appellate attorney fees.  Costs on appeal shall be divided equally between the parties.

## IV.     Conclusion

The assets contained in or purchased with funds flowing from Kevin's inheritance were traceable to his father's estate and properly set aside to Kevin.  The traditional spousal support award was appropriate and does not warrant a supplement to pay Christy's medical and dental insurance costs.  Court costs shall be divided equally between the parties.

**AFFIRMED.**

May, J., concurs; Schumacher, J., partially dissents.

**SCHUMACHER, Judge** (concurring in part and dissenting part)

I respectfully dissent in part from the majority opinion only as to the duration of Kevin's spousal support obligation. I concur in all other aspects of the majority opinion.

We review dissolution-of-marriage cases de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's fact-findings even though they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *Mauer*, 874 N.W.2d at 106. We will disturb the district court's findings only if they fail to do equity. *See Mauer*, 874 N.W.2d at 106. Because we base our decision on the unique facts of each case, precedent is of little value. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009*); In re Marriage of Houser*, No. 19-1666, 2021 WL 1016923, at *1 (Iowa Ct. App. Mar. 17, 2021). We consider the property division and spousal support together in evaluating their individual sufficiency. *In re Marriage of O'Rourke*, 547 N.W.2d 864, 866 (Iowa Ct. App. 1996).

At the time of the dissolution, Kevin was fifty-six years old, and Christy was fifty-one. Christy had not worked full-time outside of the home since the parties' children were born. As part of the decree, Kevin was awarded physical care of the parties' children. The trial court and the majority agree an award of traditional spousal support of $5000 per month until the death of either party or Christy's remarriage was appropriate, highlighting the disparity in income. Based on additional statutory considerations, including the property award, I dissent only as to the termination date of Kevin's spousal support obligation.

As part of the decree of dissolution, each party was awarded $1,543,527.83 worth of assets. The retirement accounts received by Christy have a current value of approximately one million dollars. The bulk of the debt, with the exception of the liability attached to the automobile Christy received, was assigned to Kevin as part of the decree.[7] Kevin assumed responsibility for all of the children's expenses.

Based on the above factors, equity requires Kevin's spousal support obligation terminate upon either party's death, Christy's remarriage, or Kevin's retirement, whichever occurs first. Christy was awarded sufficient retirement assets to live comfortably following Kevin's retirement.[8] When Kevin retires, he will also rely on retirement assets and any income received from his farm ground.[9] Christy's social security statement is part of the trial court record, with such statement noting a divorced spouse may qualify for up to about fifty percent of their former spouse's benefit amount. Christy has not met her burden to establish that spousal support should continue past Kevin's retirement. Christy did not testify at the dissolution trial. There is no evidence to establish the assets available to her cannot meet Christy's needs at the time of Kevin's retirement. Further, while the majority asserts that Kevin could file a modification upon retirement, citing *In re Marriage of Gust*, 858 N.W.2d 402, 418 (Iowa 2015), the record here is not

---

[7] The debt associated with the farms Christy was awarded will be paid as part of the sale of the ground. The sale was pending at the time of trial.

[8] As noted above, Christy did not testify at the dissolution trial. She filed a financial affidavit on September 18, 2019, which did not include her expenses. She filed an amended financial affidavit on September 27, 2019, listing expenses. Some of the listed expenses appear to include expenses related to the children, which Kevin assumed as part of the dissolution of the parties' marriage.

[9] As indicated by the majority, Kevin's inherited property was set off from the marital assets.

speculative as to the retirement income of the parties. It would be difficult to argue in a modification that under the instant record, retirement was not within the contemplation of the trial court at the time of the entry of the decree.

Under recently enacted federal tax law, spousal support payments are no longer tax-deductible and are not considered taxable income to the person receiving them. Tax Cuts and Jobs Act, Pub. L. No. 115–97, § 11051, 131 Stat. 2054, 2089 (2017) (repealing 26 U.S.C. § 215). As a result, the economic impact of spousal support on the paying spouse is greater today than it has been in the past.[10] Prior case law allocating percentages of income for spousal support thus have less economic impact on the payor than the allocation of a similar percentage of income to spousal support would have today under current tax law. *In re Marriage of Mann*, 943 N.W.2d 15, 21 (Iowa 2020).

Given the assets awarded to Christy, the recently enacted tax laws concerning spousal support deductibility, and the limited evidence of Christy's expenses, I dissent in part only as to the duration of spousal support awarded to Christy. Kevin's spousal support obligation should terminate upon either party's death, Christy's remarriage, or Kevin's retirement, whichever occurs first.

---

[10] Kevin argues because of the change in spousal support deductibility, Christy's spousal support equates to $104,000 per year, or $8666 per month, in pre-tax dollars.